## MOBLEY *v.* NEW YORK LIFE INSURANCE CO.

No. 751. Argued May 6, 1935.—Decided May 27, 1935.

*Mr. Sidney C. Mize* for petitioner.

*Mr. William H. Watkins,* with whom *Messrs. Louis H. Cooke* and *P. H. Eager, Jr.,* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

In 1933 petitioner brought two actions against respondent in the circuit court of Harrison county, Mississippi. There being diversity of citizenship, defendant removed them to the federal court for the southern district of that State. The court consolidated the cases for trial and, at the close of the evidence, directed verdicts and entered judgments for defendant. The Circuit Court of Appeals affirmed. 74 F. (2d) 588. And, upon petitioner's claim that the decision in this case conflicts with that of the Circuit Court of Appeals for the Sixth Circuit in *Federal*

*Life Ins. Co.* v. *Rascoe*, 12 F. (2d) 693, and other cases, this court granted a writ of certiorari.

The first action, commenced July 25, is based on an alleged breach by anticipatory repudiation of an insurance policy for $5,000, issued August 7, 1928, by defendant on the life of plaintiff, payable to his wife as beneficiary and providing for monthly payments in case of disability. Plaintiff prays judgment for $33,980.[1] The other, commenced November 1, is based on a similar life policy for $2,000, dated April 9, 1925, and payable to his mother. The prayer is for $11,600.[2] His declarations may be construed to include demands for $70 per month during claimed expectation of life plus the face amounts of the policies, all reduced to present value. The insured seeks not payment of disability benefits as they mature according to the insurer's promises, nor the damages resulting from its failure regularly to pay installments when due. His claim, as indicated by the evidence offered, is at least for the present value of the monthly payments during his expectation of life, and also for the present worth of the face value of the policy.

The question first to confront us is whether the evidence is sufficient to warrant a finding that the company repudiated the policies.

There is no controversy as to the facts. Except as above stated, the policies are alike. Each was issued in consideration of specified premiums payable semi-an-

---

[1] The record does not disclose how the amount, $33,980, was reached. Plaintiff's expectation of life was taken at 34½ years or 414 months. Payments of $50 per month would be $20,700. If the face of the policy, $5,000, be added, the total is $25,700. But it seems that payments of $70 instead of $50 per month were taken. Then the installments without discount would be $70 × 414 or $28,980, plus $5,000 equals $33,980.

[2] The declaration alleges an expectation of life of 40 years. Installments of $20 per month amount to $9,600. Adding $2,000, the face amount of the policy, produces the amount claimed.

nually in advance during the life of the insured. They provide: That whenever the insured is so disabled by bodily injury or disease that he is wholly prevented from performing any work, following any occupation or engaging in any business for remuneration, and the company receives proof that this disability will continue for life or that it has existed for the three months next preceding the proof, the company will pay monthly ten dollars per thousand of face value and waive premiums; that, before making any income payment or waiving any premium, the company may demand proof of continuance of total disability (but not oftener than once a year after disability has continued for two full years) and that, upon failure to furnish such proof, no further payments will be made nor premiums waived.

December 13, 1930, the plaintiff suffered an acute attack of appendicitis for which he submitted to surgery. March 30, 1931, not having regained his health, he claimed monthly payments for permanent and total disability. On the proof he submitted and a physical examination made in its behalf, the company allowed the claim, waived premiums, and paid him $70 per month—$50 under one policy and $20 under the other—from January 13. The company caused his condition quite frequently to be observed. Several times between June 13, 1931, and March 1, 1933, it concluded that he was not continuously and totally disabled. On each of these occasions it notified him that no further income payments would be made and that premiums would no longer be waived. But in every instance, upon his insistence that he continued to be disabled and after further investigation and consideration, the company changed its ruling, paid past due benefits, resumed monthly payments and waived premiums.

March 1, 1933, the company wrote him stating it appeared that for some time he had not been continuously disabled within the meaning of the policies, that no fur-

ther monthly payments would be made and that the premiums due on and after February 7 became payable according to the terms of the contracts. Then, through his attorney, plaintiff demanded payment of the policies in full " for the remainder of his natural expectancy, which is thirty-four years and six months from this date which under the terms of said policies will amount to $28,980," and warned that unless the matter was adjusted within seven days plaintiff would bring suit. March 17, the company wrote the attorney explaining that information obtained as a result of its customary investigation indicated that insured had sufficiently recovered to do some remunerative work, and that in view of the reports received it could not consider him totally disabled; and declared that it would adhere to its decision.

April 13, it notified plaintiff that the $5,000 policy had lapsed and urged him to apply for its reinstatement. Later, it wrote that, application for reinstatement not having been made, the value of the policy had been applied to continue the insurance in force until June 20, 1937. On June 9 it notified him that premium on the $2,000 policy was about to mature. July 8, his attorney wrote the company that, as plaintiff was totally and permanently disabled and had demanded the value of the disability benefits, it was not authorized to apply the value of the policy to purchase continued insurance and that he did not agree to that application.

July 12 the company notified plaintiff that it was willing to give further consideration to his claim for disability benefits and asked for a statement from his attending physician as to his condition since the early part of January, 1933. And it stated that one of its physicians would call to make a medical examination. The examination was made July 24. On the next day plaintiff commenced the first of these actions. The company received report of the examination July 28. It stated that from December

13, 1930, plaintiff had been prevented by disability from engaging in any occupation, that he would be permanently prevented from strenuous occupation, and gave details concerning his condition. The examiner made a supplemental report to the effect that plaintiff was not confined to his bed or house and was able to do some work but not hard work.

Thereupon the company reconsidered plaintiff's claim and, August 9, concluded that he continued to be totally and permanently disabled within the meaning of the policies. It caused to be tendered to him notices of waiver of premiums and checks to cover all disability payments accruing on both policies to and including July 13, 1933. He rejected the offers on the ground that the company was indebted to him as alleged in the declaration. Tenders of the disability benefits were thereafter regularly made on the thirteenth of each month to and including February 13, 1934, and have been kept good by payments into court. It is stipulated that plaintiff was continuously totally and permanently disabled from the date of the operation until the date of the trial.

The significance of the correspondence, the gist of which we have given, is to be ascertained having regard to the meaning of the provisions of the policies that are here involved. The insurer's promise to pay monthly benefits was conditioned on two events: the insured's disability as defined, and the specified proof. Its obligation was not an unqualified one to pay, or to pay on the mere occurrence of disability, but only after proof of that fact. Similarly its agreement to continue payments once begun was conditioned upon the persistence of insured's disability and, at the election of the insurer, proof of that fact by physical examination, but after two years not oftener than once a year. These conditions serve to define the insurer's promises but impose no obligation on the insured. By payment of the premiums he acquired the

options and privileges specified. He did not promise or in any manner bind himself to do or refrain from doing anything. The provision that the company may require proof of continuance of disability conditions the right of the insured to have future installments but imposes no obligation upon him. He was at liberty, without breach of contract, to refrain from making the claim or to refuse disclosure of his condition or to permit examination.

Repudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation. *Roehm* v. *Horst,* 178 U. S. 1, 14, 15. *Smoot's Case,* 15 Wall. 36, 49. *Dingley* v. *Oler,* 117 U. S. 490, 503. *Kimel* v. *Missouri State Life Ins. Co.,* 71 F. (2d) 921, 923. Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy. *Daley* v. *People's Building, L. & S. Assn.,* 178 Mass. 13, 18; 59 N. E. 452. There is nothing to show that any refusal of the company to pay the monthly disability benefits was not made in good faith. Its position appears at all times to have been that, if plaintiff was disabled as defined in the policy, he was entitled to the monthly benefits and waiver of premiums. The fact that, with additional information and upon further consideration, it gave greater weight to his claims and decided that he was continuously disabled as defined in the policies and so entitled to the specified payments, goes to show adherence to, rather than repudiation of, the contracts. The company's efforts to have the policies kept in force were inconsistent with purpose to renounce them. The evidence

gives no support to the claim that it disregarded or intended to break its promises. We conclude that, as found by the lower courts—rightly declining to follow the decision of the Circuit Court of Appeals for the Sixth Circuit in *Federal Life Ins. Co.* v. *Rascoe, supra,* 696—the company did not repudiate the policies. In view of that fact, we need not, and therefore do not, decide whether the doctrine of anticipatory breach is applicable to the class of cases to which this one belongs. *Dingley* v. *Oler, ubi supra.*

*Affirmed.*