**WATSON v. MASSACHUSETTS MUT.
LIFE INS. CO. (two cases).
Nos. 8129, 8130.**

United States Court of Appeals
District of Columbia.

Argued on Rehearing Oct. 15, 1943.

Decided Dec. 20, 1943.

Mr. Seth W. Richardson, of Washington, D. C., with whom Messrs. Alfons B. Landa, Raymond C. Cushwa, and Maurice M. Jansky, all of Washington, D. C., were on the brief, for appellant in each case.

Mr. Lawrence Koenigsberger, of Washington, D. C., with whom Mr. Leopold V. Freudberg, of Washington, D. C., was on the brief, for appellee in each case. Mr. Morris Simon, of Washington D. C., also entered an appearance for appellee in each case.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

The complaint in this case alleges the following facts: One Richardson was indebted to the plaintiff in an amount which is not disclosed. Plaintiff desired to protect that obligation. He requested defendant insurance company to issue a policy on Richardson's life which irrevocably made him the sole beneficiary. Defendant's agents refused to issue such a policy, but in lieu thereof offered to issue a policy on his debtor, Richardson's, life payable to Richardson's estate, and to accept from Richardson an absolute assignment to the plaintiff. Defendant represented to the plaintiff that such an assignment would make him the sole owner of the policy and accomplish the same results as if he had been named beneficiary. Richardson had no part in making this agreement except that he was willing to apply for the policy and to execute the assignment.

In performance of this agreement defendant issued the policy on Richardson's application and accepted an absolute assignment from Richardson which on its face conveyed all right, title and interest to the plaintiff. Relying on defendant's representation that the assignment gave him the interest it purported to transfer, plaintiff paid $1,871.10 in premiums during a period of years. After these premiums had been paid, defendant advised plaintiff that it did not consider him the owner of the policy, that the assignment was not absolute but collateral only. Plaintiff demands return of the premiums on the ground that defendant has breached its contract by refusing to recognize the rights

conveyed on the face of the assignment. The trial court dismissed the complaint for failure to state a cause of action, after plaintiff had declined to amend. Plaintiff appeals.

The rehearing of this appeal raises three questions: (1) Was the defendant's repudiation of the absolute assignment a breach of contract which entitled the plaintiff to rescind? (2) Do the facts stated in the complaint entitle plaintiff to a return of the premiums after rescission? (3) Is the plaintiff entitled to a return of the premiums on the ground that they were paid in reliance on a misrepresentation by the defendant?

■ The first question (whether the defendant has breached the contract) raises the issue whether the complaint discloses a sufficient insurable interest in the plaintiff to enable him to enforce a contract for insurance on the life of a third party. Where a contract of insurance is originally made with a party having an insurable interest it may be subsequently assigned regardless of the insurable interest of the assignee.[1] But the requirement of original insurable interest cannot be avoided by using the form of an assignment.[2] Therefore, the plaintiff in this case must disclose an insurable interest in order to recover on the contract alleged to have been made with the defendant.

Decisions defining insurable interest are confusing.[3] Many of them appear to accept the theory that to be valid a life insurance contract must indemnify the person who contracts for the insurance for some pecuniary interest which he has in the life of the subject of the policy. Following that theory a contract to insure a creditor against the death of his debtor would be valid only if it were intended as collateral security for the debt and the proceeds were to be used to extinguish the debt.[4] Since plaintiff asserts that the assignment of the policy in this case is intended to be entirely independent of the debt, it would, according to this theory, be unenforceable.

However, the logic of the indemnity theory of insurable interest is contradicted by many exceptions which appear to be settled law. For example, a subsequent assignee who has no indemnity interest in the life on which a policy is written may continue to pay the premiums, and thus speculate on the longevity of another, if the insurance contract was valid when issued.[5] A person contracting for insurance on his own life may name a beneficiary who has no indemnity interest.[6] Such a beneficiary may speculate on the contract by taking over the payment of the premiums.[7] If the purpose of the rule is to prevent gambling on the life of a third party these exceptions nullify that purpose. The indemnity rule of insurable interest is unworkable for the further reason that in most cases it is impossible to put pecuniary value on a life, as contrasted, for example, to property insured against fire.

The doctrine of insurable interest was developed in this country by judicial decision to meet two objections frequently urged against the indiscriminate enforcement of life insurance: (1) that they are wagering contracts, and (2) that they create the temptation to take human life.[8] If we regard the purpose of the rule as one designed to eliminate either the wagering features or the temptation to take life in each individual insurance contract, the results reached by established decisions cannot be explained. Such a purpose would require that only persons who insured their

[1] Grigsby v. Russell, 1911, 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133, 36 L. R.A.,N.S., 642, Ann.Cas.1913B, 863.

[2] Cammack v. Lewis, 1873, 82 U.S. 643, 15 Wall. 643, 21 L.Ed. 244; see Patterson, Insurable Interest in Life, 18 Columbia L.R. 381, 391, 418 (1918). Grigsby v. Russell (supra, note 1) involved an assignment made after the insured had paid some premiums, and the assignment was not made as part of a pre-arranged scheme. And see Midland National Bank v. Dakota Life Ins. Co., 1928, 277 U.S. 346, 350, 48 S.Ct. 532, 72 L.Ed. 911.

[3] For a general discussion of the subject see Patterson, op.cit. supra, note

[2] Vance on Insurance, §§ 52–58, 163 (1930).

[4] See Crotty v. Union Mutual Life Ins. Co., 1892, 144 U.S. 621, 624, 12 S.Ct. 749, 36 L.Ed. 566; Vance on Insurance, § 163, p. 627 (1930) (citing cases).

[5] Grigsby v. Russell (supra, note 1).

[6] United States Mutual Accident Association v. Hodgkin, 1894, 4 App.D.C. 516.

[7] Carter v. Provident Ins. Co., 1941, 74 App.D.C. 348, 122 F.2d 960; see Union Life Ins. Co. v. Evans, 1937, 193 Ark. 627, 101 S.W.2d 778, 780.

[8] See Patterson, op.cit. supra note 2, p. 385.

own lives be permitted to make insurance contracts. Further, an insured person could not freely assign his policy beyond its surrender value. Beneficiaries or assignees without insurable interest could not continue to pay premiums, because the effect would be to speculate on the life of another. But the decisions put no such limitation on insurance contracts. Only in the case where a creditor makes the initial arrangement with the insurance company is there a substantial split of authority. In that situation some decisions regard the policy as collateral to the debt and limit the absolute right of a creditor to receive the proceeds.[9] We can discover no basis for this distinction. Certainly it can hardly be said that a creditor who arranges for insurance on the life of his debtor is any more of a gambler or has any more temptation to murder than the subsequent assignee who may have no interest whatever in that life.

 A better rationale of insurable interest is that its purpose is intended not to take the gambling features out of each particular contract but to limit public opportunity to engage in a speculative business of buying and selling insurance policies on the lives of others. Such a purpose can be accomplished by imposing two safeguards which limit the class of persons who can enforce such policies—(1) They must stand in a close family or financial relationship with the person whose life is the subject of the policy; [10] (2) They must acquire the insurance with the consent of such subject.[11] Thus the rule of insurable interest becomes a limitation not on each individual contract or assignment but a doctrine which restricts the power of individuals to give away or sell chances on their own lives, in order to avoid creating an opportunity for a brokerage business in buying or selling policies. The results of the cases can better be explained on this theory than any other. According to this theory a creditor who belongs to an insurable class because of a substantial financial relationship with the debtor may have an absolute right in the policy on his debtor's life which is not limited to collateral security. Subsequent payment of the debt will not affect that right and the proceeds of the policy need not be used to extinguish the debt. For these reasons we believe we should follow the cases which permit a creditor's policy to be enforced independently of the debt which gives rise to his insurable interest.[12]

 The sole test of a creditor's insurable interest is whether the amount of the debt is reasonably proportionate to the amount of the insurance for which he contracts.[13] Such a test is necessary to limit the class of insuring creditors to those who have a substantial financial association with the subject of the insurance contract. An additional requirement is, of course, the consent of the person on whose life the policy is written.

 Applying the above interpretation of the doctrine of insurable interest we find no facts in the complaint which justify us in declaring that the absolute assignment of the policy to the plaintiff in this case was invalid or that the defendant was not bound to give effect to its terms. The fact that the amount of the indebtedness is not

9 See note 4, supra; Exchange Bank v. Loh, 1898, 104 Ga. 446, 31 S.E. 459, 44 L.R.A. 372.

10 Certain family relationships require no showing of a financial relationship—either because it is presumed, or because the temptation to homicide is outweighed by the closeness of the relationship. Others require a showing of a financial interest. Carter v. Continental Life Ins. Co., Inc., 1940, 73 App.D.C. 60, 115 F. 2d 947.

11 See Annotation, 1902, 56 L.R.A. 585, 591.

12 " * * * If the creditor insures the life of his debtor, he is thereby indemnified against the loss of his debt by the death of the debtor before payment; yet, if the creditor keeps up the premiums, and his debt is paid before the debtor's death, he may still recover upon the contract, which was valid when made, and which the insurance company is bound to pay according to its terms; but if the debtor obtains the insurance on the insurable interest of the creditor, and pays the premiums himself, and the debt is extinguished before the insurance falls in, then the proceeds would go to the estate of the debtor. * * *" Central National Bank v. Hume, 1888, 128 U.S. 195, 9 S.Ct. 41, 44, 32 L.Ed. 370; Rittler v. Smith, 1889, 70 Md. 261, 16 A. 890, 2 L.R.A. 844; Appeal of Corson, 1886, 113 Pa. 438, 6 A. 213, 57 Am.Rep. 479.

13 Cammack v. Lewis (supra, note 2); Grant's Adm'rs v. Kline, 1887, 115 Pa. 618, 9 A. 150; Vance on Insurance, § 56 (1930).

disclosed leaves open the possibility that such indebtedness was not large enough to support an insurable interest. But, illegality is not to be presumed; it must affirmatively appear. The allegation that the insurance was taken out for the purpose of protecting existing indebtedness makes a prima facie case in favor of the validity of the contract.

Therefore, the allegation that the defendant refused to recognize the terms of the absolute assignment to the plaintiff, which it had previously accepted, is sufficient to charge a breach of contract. It is not necessary to consider the doctrine of anticipatory breach.[14] An insurance contract is not a fixed obligation to pay money at a future date. It is a contract to give continuous insurance protection for the period covered by the premiums. In the case of a short term policy the chances are that the liability to pay money will never arise while the policy is in force. Even a life policy is not a fixed obligation to pay at some future date which is undetermined. It is a series of contingent obligations to pay if death occurs during the year covered by each successive premium. Therefore, when the defendant disclaimed liability it committed an immediate, not an anticipatory, breach of its contract to furnish insurance protection.[15] Had the plaintiff chosen to do so he could have sued for damages, which ordinarily would have been the difference in cost between the repudiated policy and other insurance taken out at the advanced age of the subject of the policy.[16]

However, instead of seeking damages plaintiff has elected to rescind. We must, therefore, consider the second question—whether his right to rescission entitles him to return of the premiums.

Some cases permit the recovery of premiums when an insurance company repudiates its liability, without reduction for the benefit of the insurance afforded while the policy was in force.[17] This is in conflict with the well-established rule that if a party seeks restitution after rescinding on account of a breach of an executory contract he must deduct the benefits, if any, which he has received under such contract.[18]

Only a total failure of consideration should entitle the plaintiff to recover all his premiums. In this case the plaintiff was actually receiving full insurance protection prior to defendant's repudiation. It would require the application of the principle of punitive damages to permit him to recover the premiums which represented what it cost the defendant to carry the insurance for his benefit.[19] A rule allowing the recovery of all premiums upon repudiation of an insurance contract can logically apply only to a case of intentional misrepresentation where it is shown that the defendant was at no time during the life of the policy willing to meet its obligation. There are no facts alleged which show such an intentional misrepresentation. So far as we can determine from the complaint, plaintiff received full value for all premiums paid prior to the disclaimer. His right to rescind the contract does not carry with it the right to recover such premiums to the extent that they represent the cost of carrying insurance protection actually furnished the plaintiff. No payments in excess of such costs are alleged.

Nor does the complaint support recovery on the theory of misrepresentation. If the insurance company had induced the plaintiff to pay premiums on an invalid policy, relying on its familiarity with the law, it might well be that the com-

---

14 Cf. New York Life Ins. Co. v. Viglas, 1936, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971; Mobley v. New York Life Ins. Co., 1935, 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621, 99 A.L.R. 1166.

15 See Annotation, 1927, 48 A.L.R. 107.

16 Speer v. Phœnix Mut. Life Ins. Co., 1885, 36 Hun, N.Y., 322; Bass v. Life & Annuity Ass'n, 1915, 96 Kan. 205, 150 P. 588. See Annotation, 1927, 48 A.L.R. 107, 118. Another alternative is, of course, the right to recover the value of the policy at the time of the breach. Lovell v. St. Louis Mut. Life Ins. Co.,

1884, 111 U.S. 264, 4 S.Ct. 390, 28 L. Ed. 423; Capital City Ben. Soc. v. Travers, 1925, 55 App.D.C. 214, 4 F.2d 290.

17 See Vance on Insurance, § 94 (1930); Annotation, 1927, 48 A.L.R. 107, 110 et seq.

18 Lovell v. St. Louis Mutual Life Ins. Co. (supra, note 16); Capital City Ben. Soc. v. Travers (supra, note 16).

19 For the application of this principle to a variety of situations see Annotation, 1942, 136 A.L.R. 5.

pany should be compelled to return them.[20] That question does not arise here because on the face of the complaint the assignment appears to be valid. Consequently, at the time the insurance policy and the assignment were completed the company made no misrepresentation. The subsequent disclaimer was not a misrepresentation but a breach of the contract. The complaint discloses no facts which enable us to determine the excess of the premiums paid over the benefits received. It simply demands as a remedy for rescission the return of the entire premiums without reduction for insurance protection furnished prior to the repudiation. It was properly dismissed for this reason.

Affirmed.

---

[20] American Law Institute, Restatement of Restitution, § 55(b) (1937); 5 Williston on Contracts, § 1591, p. 4439, n. 4 (1937). Rauen v. Prudential Ins. Co., 1906, 129 Iowa 725, 106 N.W. 198; Hudson v. Glens Falls Ins. Co., 1916, 218 N.Y. 133, 112 N.E. 728, L.R.A. 1917A, 482; Berry v. American Central Ins. Co., 1892, 132 N.Y. 49, 30 N.E. 254, 28 Am.St.Rep. 548; Penn Mut. Life Ins. Co. v. Nunnery, 176 Miss. 197, 167 So. 416 (1936).