### ENGLEHART v. VOLUNTEER STATE LIFE INS. CO.

No. 2551.

Court of Civil Appeals of Texas. Eastland.

June 28, 1946.

Rehearing Denied July 22, 1946.

F. D. Wright, of Cisco, for appellant.

Turner & Seaberry, of Eastland, for appellee.

LONG, Justice.

This is a suit by Mrs. Nellie A. C. Englehart against Volunteer State Life Insurance Company. Mrs. Englehart alleged that the insurance company issued to her on February 4, 1930, a policy of life insurance in the principal sum of $1,000; that the policy contained a provision for the payment of a monthly income of one per cent of the face value of the policy in the event she became totally disabled, such payments to continue so long as the disability existed. She further alleged that on the 17th day of November, 1937, at a time when such policy was in full force and effect, she was totally and permanently disabled in an automobile wreck; that the company, after proper proof of such disability, began the monthly payments and continued the same until the 9th day of October, 1944, since which time it has failed and refused to make the payments. She sought to accelerate the payments and declare all of the same due, alleging that she had a life expectancy of 31.78 years, and she also prayed for 12 per cent penalty and a reasonable attorney's fee. The insurance company, among other defenses, plead that its refusal to pay the installments was based upon information that plaintiff was no longer totally and permanently incapacitated, and that it acted in good faith in refusing to make further payments, and that when it was found that such information was inaccurate it offered to pay all unpaid installments and tendered the amount of such payments into court. Upon a trial before the court judgment was entered dismissing the suit. Mrs. Englehart has appealed.

The trial court filed very comprehensive findings of fact, which we believe have ample support in the evidence. Such findings of fact are as follows:

"I. I find that the policy of insurance involved in this controversy was issued to the plaintiff, Nellie A. Carmichael Englehart, by the defendant, The Volunteer State Life Insurance Company of Chattanooga, Tennessee, on the 4th day of February, 1930; that under said policy at the death of the insured, the defendant company agreed to pay to the beneficiary, Anna Lockhart Carmichael, if living, the sum of One Thousand ($1,000.00) Dollars. If not living, to the executors, administrators or assigns of the insured.

"I find that the said policy further provided that if after one full annual premium had been paid thereon, and while the policy was in full force and effect, satisfactory proof to the Company was received at its home office, that the insured had become totally and permanently disabled as defined in the policy, that the defendant Company

would, during such total disability, waive the payment of any premium falling due after approval of proof, during such disability, and that during such disability, said Company would pay to the insured a monthly income of one per cent of the face amount of said policy, beginning immediately upon approval of proof and continuing while such total disability continues, except the payment shall not continue beyond the maturity of the policy as an endowment; that the annual premium due and payable under said policy was the sum of $32.38; that said premiums were promptly paid by the plaintiff on the said policy until on or about the 17th day of November, 1938, at which date the plaintiff herein was injured in an automobile accident.

"II. That after the plaintiff's injury on said 17th day of November, 1938, the defendant Company was notified of such injury and proof thereof was made and delivered to said defendant Company, satisfactory to it, after which the said defendant made monthly payments to the plaintiff in the sum of $10.00, which said payments continued until on or about the 9th day of October, 1944.

"III. That during the month of October, 1944, a representative of the defendant called upon the plaintiff at Cisco, Texas, and discussed her physical condition with her and on said occasion made other investigations as to her physical condition at that time, and thereafter on November 2, 1944, informed the plaintiff by letter of that date that the recent investigation made by the defendant indicated that the plaintiff's condition was not such at that time as would entitle plaintiff under the terms of the policy to receive benefits under the total and permanent disability clause of the policy of insurance in controversy, and in said communication the defendant called plaintiff's attention to the clause of the insurance policy under which payments had been previously made, and requested that plaintiff read such provisions carefully; that in the same communication the defendant informed the plaintiff that all premiums on her policy of insurance, the one here in controversy, had been paid up to February 4, 1945, and that the next premium was due on that date, and that her policy of insurance was in full force and effect, subject to its terms and conditions.

"IV. That on November 10, 1944, at the request of the plaintiff, her attorney, Mr. F. D. Wright of Cisco, Texas, wrote the defendant Company at its home office in Chattanooga, Tennessee, acknowledging receipt by the plaintiff of the defendant's letter of November 2, 1944, expressing regrets of the attitude of the defendant and informing the defendant that it was the opinion of the writer, Mr. Wright, from his personal acquaintance with the plaintiff and the investigations which he had made in connection with her physical condition, that she, the plaintiff, was totally and permanently disabled and was entitled under the terms of the insurance policy in controversy, to continue to receive the monthly payments, and that such letter was promptly received by the defendant Company.

"V. That on November 15, 1944, the defendant company, through its attorneys, Miller, Miller & Martin of Chattanooga, Tennessee, wrote the plaintiff's attorney, Mr. F. D. Wright, at Cisco, Texas, advising that the defendant Company had turned over to the said attorneys their files in connection with the insurance policy and that in said files was the letter written by Mr. Wright to the defendant on November 10, 1944. In this communication the defendant's attorneys stated that the information which they found in the files is to the effect that Mrs. Englehart, plaintiff herein, was a very competent business woman and was handling in a capable manner her part of the work in the store which she and her father operated; that they understood that she worked full time in the store every day and that her occupation at that time was the same as it was before she received her injury, and suggested that if this information is correct, then, it appears that she was not totally and permanently disabled at that time from carrying on an occupation for remuneration or profit; but that to the contrary, it seemed that she was able to carry on her customary occupation. The said attorneys in said letter cited cases from various states, including Texas, which

they asserted sustained their contention. In this communication, the said attorneys submitted a compromise settlement in which they agreed to pay the full face value of the policy, or One Thousand ($1,000.00) Dollars plus all of the disability income which she would receive under it for a period of three years. The total amount which the defendant offered to pay to the plaintiff in full settlement under said policy was the sum of Thirteen Hundred Sixty ($1360.00) Dollars. The attorneys in said letter indicated that the sum just named would be as much as the Company would be willing to pay in settlement under the policy.

"VI. That under the date of November 29, 1944, Mr. F. D. Wright, Attorney for the plaintiff, and at her request, wrote a letter to The Volunteer State Life Insurance Company of Chattanooga, Tennessee, Attention Miller, Miller & Martin, Attorneys, acknowledging receipt of the defendant's letter of November 15, 1944, advising that he, the plaintiff's attorney, had concluded that in all probability the trial court would hold Mrs. Englehart totally and permanently disabled, and that plaintiff's attorney was filing suit for the plaintiff on the said policy of insurance and enclosed to the defendant a copy of the plaintiff's petition; that this suit by the plaintiff was filed in the 91st District Court, Eastland County, Texas, on November 29, 1944.

"VII. That on December 2, 1944, ·the defendant's attorneys, Miller, Miller & Martin, wrote a letter to Mr. F. D. Wright, Attorney for the plaintiff, at Cisco, Texas, acknowledging receipt of Mr. Wright's letter of November 29, 1944, together with a copy of the plaintiff's petition filed in this cause on said 29th day of November, 1944. In this communication, the defendant's attorneys insist that the Company was correct in its conclusion that the plaintiff was no longer totally disabled to perform service for compensation, but stated that since the amount involved was small and that they did not feel they would be justified in litigating, and that the said attorneys had discussed the matter with the defendant's Claim Department and that the said attorneys were authorized to state that the defendant was willing to reverse its decision previously made and to resume payment of disability benefits where they were left off, and further, that the Company was willing to forward check for any payments due on the disability clause of the policy and to send the December, 1944 check when it was due. In addition, they expressed a willingness to pay the costs of the court and a reasonable attorney's fee and asked to be advised if this would be satisfactory with the plaintiff. The plaintiff's response to the defendant's letter of December 2, 1944, through her attorney, Mr. F. D. · Wright, communicated to the defendant under date of December 5, 1944, and declined to accept the offer made by the defendant in its said letter and stated further that the plaintiff was not willing to dismiss her suit and was making plans to go forward with it unless her claim could be adjusted in a satisfactory manner.

"VIII. In the defendant's Original amended answer, upon which it went to trial, it reiterated its willingness to restore the plaintiff all unpaid installments and to continue in the future during the continuation of the plaintiff's total disability, to pay said monthly installments as they matured, and the said defendant has actually tendered in Court all sums of money which have matured since the last payment was made to the plaintiff before the filing of the suit and all monthly payments which have accrued since said time, which said funds have been deposited in the Register of the Court and legal tender thereof made to the plaintiff by the defendant; the said tender having been refused by the plaintiff.

"IX. That the defendant, in making the investigation as to the physical condition of the plaintiff, which was begun in October, 1944, and in their claim that the plaintiff was no longer totally disabled from performing work for compensation, was acting in perfect good faith in writing the letters informing the plaintiff of the investigations made and of the conclusions arrived at.

"X. That the defendant herein did not repudiate the contract of insurance in controversy, and did not repudiate the disability clause under which it had previously

made monthly payments to the plaintiff, but only denied liability under the terms of the disability contract as construed by the defendant, making the contention that the plaintiff had partially recovered and was able to perform service for compensation and that under such facts claimed by the defendant, they were not liable under the disability clause of the contract under conditions then claimed by the defendant to exist.

"XI. The court finds that at the time of the trial of this cause the plaintiff herein is totally and permanently disabled as defined in the policy of insurance in controversy.

"XII. The court further finds that on the date of the trial of this cause, October 10, 1945, the plaintiff had life expectancy of sixteen (16) years."

The above findings of fact by the trial court cover the controlling issues in the case and it is not necessary for us to set out such facts for the reason that they are amply and well stated in the court's findings.

 The doctrine of allowing recovery for an anticipatory breach of contracts is recognized in Texas. Pollack v. Pollack, Tex.Com.App., 46 S.W.2d 292. If Mrs. Englehart had alleged and proved that the insurance company had repudiated the insurance policy without just cause, then there is no question but what she could have accelerated the monthly payments and have collected the same in a lump sum. Therefore, the question before us is, Did the insurance company repudiate its contract under the facts before us? The trial court found, and there is no question but that Mrs. Englehart was totally and permanently disabled at the time the insurance company refused to make further payments under the disability clause of the contract. The trial court further found that the insurance company did not repudiate the contract, but upon information refused to make additional payments for the reason that it believed Mrs. Englehart was no longer totally and permanently disabled, and that the insurance company in good faith denied liability under the disability clause of the contract.

The trial court filed the following conclusions of law: "From the above facts, the court finds that since there was no repudiation on the part of the defendant of the disability clause of the contract of insurance in controversy, that there can be no recovery by the plaintiff; that the said cause should, therefore, be dismissed at the cost of the plaintiff without prejudice to her rights to claim the funds tendered in court by the defendant."

 We believe that the trial court made the correct application of law to the facts in this case. The refusal in good faith upon a misunderstanding as to matters of fact is sufficient to constitute a breach of a contract, but the same does not amount to such a repudiation as to constitute an anticipatory breach thereof.

In the case of Universal Life & Accident Ins. Co. v. Sanders, 129 Tex. 344, 102 S.W. 2d 405, 407, in an opinion by Judge Hickman, it is held: "It is not to be understood that we are extending the doctrine of anticipatory breach so as to make it applicable to cases where the insurer merely denies liability or claims defenses under the terms of the policy. The Pollack opinions limit its application to cases in which the obligor absolutely repudiates the obligation without just excuse. As stated in Mobley v. New York Life Insurance Co., 295 U.S. 632, 55 S.Ct. 876, 878, 79 L.Ed. 1621, 99 A.L.R. 1166: 'Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy. Daley v. People's Bldg., [Loan] & Sav. Ass'n, 178 Mass. 13, 18, 59 N.E. 452.'"

 The record discloses that the company paid the monthly installments under the disability clause for about six years. Upon being informed that Mrs. Englehart was no longer disabled and had resumed her work in a grocery store, the company, after making an investigation of the matter, denied liability under the disability clause and refused to make any further payments thereunder. Thereafter, when the company learned that the information furnished it

was not correct, it offered to resume the monthly payments under the contract, and upon the trial tendered into court the amount of such payments then due. The record amply justifies the trial court's findings that the insurance company did not repudiate the contract. This being true, there could be no recovery for an anticipatory breach thereof. American Nat. Ins. Co. v. Points, Tex.Civ.App., 81 S.W.2d 762. Mrs. Englehart could have recovered the amount of the unpaid installments, but as there were only two payments of $10 each due at the time the suit was filed, such amount being below the jurisdiction of the District Court, the trial court entered the proper judgment when he dismissed the suit.

The judgment of the trial court is affirmed.