**INTERNATIONAL UNION OF AUTOMOBILE WORKERS, et al., Plaintiffs,**

**v.**

**PARK–OHIO INDUSTRIES, et al., Defendants.**

Civ. A. No. C85–1761.

United States District Court,
N.D. Ohio, E.D.

Nov. 12, 1987.

William P. Bobulsky, Betty Grdina, Ashtabula, Ohio, for plaintiffs.

Diane Stanton, Jackson, Lewis, Schnitzler & Krupman, Atlanta, Ga., Michael Cecere, Jackson, Lewis, Schnitzler & Krupman, New York City, Harold Madorsky (Local Counsel), Park–Ohio Industries, Inc., Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Plaintiffs in this action seek equitable relief and damages for alleged violations of their contractual rights created by a collective bargaining agreement, and of their statutory rights created by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982 and Supp. III 1985). These rights were allegedly breached by defendants' refusal to provide employees who retired after the expiration of a collective bargaining agreement with health/hospitalization and life insurance benefits.

For the reasons set forth below, the Court grants defendants' motions to dismiss plaintiffs' request for a separate trust fund and for an award of damages for mental distress, pain and suffering.

### I.

The facts have been carefully set forth in the Court's previous memorandum, 661 F.Supp. 1281. In brief, the defendant is Park–Ohio Industries, Inc. ("Park–Ohio"), a manufacturing concern. Plaintiffs are 34 former employees of Park–Ohio's Crankshaft Division, or their widows, who retired after the expiration of a 1980–1983 collective bargaining agreement; the union representing them, the International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW"); and UAW's local No. 91 (together, "the union").

Plaintiffs allege that the termination of their health and life insurance benefits violated their collective bargaining agreement and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982 and Supp. III 1985). Plaintiffs seek damages under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982) and under ERISA. The Court has granted summary judgment for plaintiffs on the question of whether defendants breached the collective bargaining agreement and found the defendants liable under both ERISA and § 301. The parties have settled their claims relating to the life in-

surance benefits. All that remains is the question of damages for the plaintiffs' loss of health benefits.

## II.

### A.

Plaintiffs seek to have this Court establish a special trust fund, in an amount sufficient to fund the health insurance coverage which the plaintiffs would have received had they not been wrongfully terminated from their health benefits plan. Defendants seek a reinstatement of the plaintiffs to the existing plan.

Plaintiffs correctly point out that both remedies will make plaintiffs whole, and that the defendants do not have the choice of which form of remedy will be used. However, as plaintiffs concede, the Court has broad discretion in fashioning a remedy. "ERISA grants the Court wide discretion in fashioning legal and equitable relief to make the plan whole and protect the rights of beneficiaries...." *Gilliam v. Edwards*, 492 F.Supp. 1255, 1266 (D.N.J. 1980). The standard the Court should use in fashioning relief is what would best carry out the purposes of the plan. *See, e.g., Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 643 (W.D.Wisc.1979). This Court now determines that it is not bound by plaintiffs' choice of relief.

ERISA sets forth the standards for civil enforcement of its provisions.

A civil action may be brought—

(1) by a participant or beneficiary—

. . . . .

(B) to recover benefits due him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan;

. . . . .

(3) by a participant, beneficiary or fiduciary ...

(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(1)(B) and (a)(3)(B).

It is clear that the ordinary ERISA suit will be either a suit for past benefits denied, or a suit to ensure future benefits, or a combination of the two. The third clause of § 1132(a)(1)(B) contemplates that an individual will ordinarily continue as a participant within the plan, even if it is necessary to sue to ensure that the plan fulfills its obligations to him. While further equitable relief is available, under § 1132(a)(3)(B), it would seem to be the intent of Congress for the courts to resort to it only in unusual circumstances.

By asking for a separate trust fund, plaintiffs have, in essence, asked the Court to remove the defendants from their positions as trustees. While the Court clearly has the authority to do so, it believes such a drastic remedy is unwarranted in this case.

Defendants have been found to have violated their fiduciary duties towards the plaintiffs. But, as the Court's previous opinion makes clear, this was the inevitable result of losing their contract claim. Had Park–Ohio's interpretation of the contract been correct, it is doubtful that they would have been found to have breached a fiduciary duty.

Those cases which remove a party as a trustee for an ERISA plan involve either repeated violations of fiduciary duty, dealings for the fiduciary's own benefit, or both. They also involve losses to the fund, which is not the case here. *See, e.g. Katsaros v. Cody*, 744 F.2d 270 (2d Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (repeated violations leading to $2.5 million judgment against defendants); *Eaves v. Penn*, 587 F.2d 453 (10th Cir.1978) (trustee used funds for own benefit and caused loss to fund of over $500,000); *Freund*, 485 F.Supp. 629 (bad loans causing loss of over $450,000).

Removing the defendant as trustee is a step which should not be taken lightly. There is no indication that Park–Ohio will not follow this Court's orders and provide the benefits to which plaintiffs are entitled.

*See Hauck v. Eschbacher,* 665 F.2d 843, 848 (8th Cir.1981). Because the Court does not believe Park–Ohio's actions to be so egregious or such a breach of fiduciary duty as to warrant replacing it as trustee, the Court holds that under ERISA plaintiffs may not receive as damages a trust fund in the amount necessary to fund health insurance benefits, and instead should simply be reinstated to Park–Ohio's existing ERISA plan. *See, e.g., Gilliam,* 492 F.Supp. 1255 (self-dealing in setting salary did not warrant removing defendant as trustee). The Court also notes that "the remedy which best carries out the purpose of the plan," *Freund,* 485 F.Supp. at 643, is that remedy which keeps together all the Park–Ohio employees, as the plan originally envisioned.

### B.

Defendant also violated § 301 when it failed to provide plaintiffs the health benefits to which they were entitled. It is possible, then, that while ERISA would not sanction a separate trust fund, § 301 might.

The law to be applied in § 301 cases is federal law; the courts are mandated to establish a federal common law to be used in labor disputes. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985); *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

■ Plaintiffs look to Ohio contract law and the Second Restatement of Contracts and urge the Court to adopt that law as part of the federal common law. But it is not clear that plaintiffs would prevail even under these conceptions. The cases plaintiffs cite relate to situations where one individual is denied coverage under an insurance contract. Where the insurer does not repudiate the contract, but denies coverage within the scheme of the contract, there is no anticipatory repudiation. *See Mobley v. New York Life Insurance Co.,* 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621 (1935).

■ Plaintiffs argue that Park–Ohio refused to continue coverage of plaintiffs and thus repudiated the contract. While that might be true if the contract were one between the individual plaintiffs and Park–Ohio, it is not true where the contract is an agreement between the union on behalf of its members and Park–Ohio.[1] It is clear that Park–Ohio did not repudiate that contract. It erroneously interpreted that contract, and thus breached it, but it did not repudiate it. Park–Ohio evinced an intent to stay within the contract, but disagreed with the union as to exactly which of its members were covered. Park–Ohio's breach is thus similar to the one in *Mobley,* where New York Life denied disability payments because it believed that Mobley was no longer disabled and thus no longer eligible to receive the payments. As plaintiffs admit, if the defendant has stayed within the terms of the contract, there is no repudiation. Thus, if this Court were to apply traditional contract law, it would not find an anticipatory repudiation, and would limit plaintiffs' remedies for future violations to equitable remedies. In granting plaintiffs equitable relief, the Court would analyze the situation as above and grant plaintiffs a permanent injunction against future breaches. Thus, even under contract principles, plaintiffs would not receive the trust fund which they seek.

■ But it is not clear to the Court that general contract principles should prevail. Rather, the Court believes that it should look to the policies of ERISA to determine the remedy for an ERISA violation, even if the claim is brought under § 301. *See In re White Farm Equipment Co.,* 788 F.2d 1186, 1191 (6th Cir.1986) ("we look to federal law to see if any express or implicit statutory command or other federal policy mandates a [particular] federal common law rule."). In other words, the Court will incorporate into federal common labor law the intent of Congress, as expressed in ERISA.

■ In ERISA, Congress has expressed its intent that the ordinary case proceed as

---

1. The individual employees are not direct parties to that contract, but rather are third-party beneficiaries. Restatement (Second) of Contracts § 302, Illust. 14.

**342**

a determination of the rights of the beneficiary. The Court reads this as an expression of belief that the trustees of a fund will not continue to deny a beneficiary benefits once those benefits have been determined to be due. The Court also reiterates its belief that Park–Ohio will in good faith carry out the orders of this Court. Absent unusual circumstances, the Court should not replace the trustees, or grant plaintiffs the equivalent remedy of a separate fund, under the broad equitable powers which Congress granted it in ERISA cases.

For these reasons, the Court believes the best remedy for Park–Ohio's breach is to order it to reinstate plaintiffs' health benefits as if they had not been wrongfully terminated from the plan.

### III.

■ Plaintiffs also seek damages for mental distress arising from the wrongful termination of their health insurance coverage and from their lack of coverage during the relevant period. The Court has previously ruled that these damages are not available under ERISA. Unlike the question of the proper remedy to be applied, ERISA does not express a preference on the awarding of emotional damages, but rather simply does not authorize it. The damages may therefore be available under § 301.

Plaintiffs cite only two cases for their proposition that damages for mental distress are available under § 301, *UAW v. Federal Forge,* 583 F.Supp. 1350 (W.D. Mich.1984) and *Haytcher v. ABS Industries,* 7 EBC 21258 (N.D.Ohio 1986), a decision of this Court.

In *Haytcher,* this Court held that damages for emotional distress were available under ERISA. In three and one half pages, the Court analyzed ERISA and determined that damages for emotional distress were available. The Court then noted, in a paragraph, that it was also persuaded by *Federal Forge* that damages for emotional distress were also available under § 301, although it noted that punitive damages are generally not available. The Court has since, in a previous opinion in

this case, retreated from its holding in *Haytcher* that emotional damages were available under ERISA. The Court feels that a reexamination of *Haytcher* as to its holding regarding emotional damages under § 301 is also warranted.

*Federal Forge* applied Michigan law to deny summary judgment against a claim for damages for emotional distress arising out of a breach of an agreement to provide health insurance. Plaintiffs claim that this result is now absorbed into federal law and is viable because it has not yet been overruled. Of course, the decision of another district court is not binding on this Court, and is only entitled to such persuasive weight as its logic commands.

As the *Federal Forge* court noted, the Sixth Circuit has determined that when a district court looks to state law to determine federal common law under § 301, the state's law which it is to look at is the state in which it is sitting. *Federal Forge,* 583 F.Supp. at 1356 n. 2 (citing *UAW v. Yard–Man, Inc.,* 716 F.2d 1476, 1487 (6th Cir. 1983)). This Court, then, should look to Ohio contract law, as well as general contract law, to determine whether damages for mental distress are available.

■ Ohio state law is very strict in not allowing compensation for emotional damages which result from a breach of contract. Only two cases allow damages for emotional distress as damages for breach of contract. *Deitsch v. The Music Co.,* 6 Ohio Misc.2d 6, 453 N.E.2d 1302 (Hamilton Cty.Munic.Ct.1983); *Pullman Co. v. Willett,* 72 Ohio St. 690, 76 N.E. 1131 (1905). Both cases involved marriage, and in both cases ordinary contract remedies are clearly inadequate.

In *Deitsch,* plaintiffs were a husband and wife who sued a musical band for breaching their contract to perform at the plaintiffs' wedding. As a result of the breach, there was no music at the celebration. The court found that a simple return of the deposit was insufficient, and that the emotional damages were a foreseeable result of the band's breach. But the opinion also implies that had plaintiffs been able to se-

cure another band to perform, the court would not have awarded emotional damages, but would have limited plaintiffs' recovery to ordinary contract remedies, despite any anxiety and distress which might have occurred as a result of the breach.

In *Willett,* plaintiffs were a couple on the first night of their honeymoon who had arranged for a sleeping car on the train. When the car was not provided, they had to sit up most of the night, and change cars several times. The court upheld an award for emotional damages because of the extraordinary circumstances involved and because the difference in price failed to adequately measure the amount of discomfort suffered.

This Court must conclude, then, that adopting Ohio law as federal law in this § 301 case would prevent the imposition of emotional damages for breach of contract.

Looking to other sources does not help the plaintiffs' cause. The Second Restatement also disapproves of awards of emotional damages as contract damages, stating that they should be available only if the breach is of such a kind that serious emotional injury would likely result. Restatement (Second) of Contracts § 351. This is not such a case. The typical examples are those contracts which inherently involve highly charged emotional situations, such as marriages or deaths.

Illustration 1 of § 351 is an example of when emotional damages are not available. In that illustration, a party contracted with a builder for a house. The builder knew that the party was in "delicate" health, and that the construction of the house was of great importance to him. Still, when the builder breached, and the party suffered emotional distress, damages for that distress were not available.

In *Harrison v. Nationwide Mut. Ins. Co.,* 580 F.Supp. 133, 135–36 (E.D.Pa.1983), the court disallowed an emotional damage claim where the defendant insurance company denied the plaintiff's claim for damages resulting from his house burning down. The court noted that the insurance company's acts were not so outrageous as to be likely to cause emotional damages.

Ohio law, even when there is an action *in tort* for emotional damages, requires: a) an intention to cause emotional distress, or that the defendant knew or should have known that its actions would cause *serious* emotional distress; and b) conduct so extreme and outrageous that it goes "beyond all possible bounds of decency." *Pyle v. Pyle,* 11 Ohio App.3d 31, 34, 463 N.E.2d 98 (Cuyahoga Cty.Ct.App.1983). Again, this clearly is not such a case.

Thus, while this Court explicitly does not rule that emotional damages may never be available in a § 301 case, defendant's conduct in this case does not rise to such a level as to warrant granting plaintiffs damages for emotional distress resulting from defendant's breach of contract.

IT IS SO ORDERED.