**Paul FERRAGAMO, Plaintiff,**

v.

**CHUBB LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 94 Civ. 10164 (MEL).**

United States District Court, D. Massachusetts.

June 27, 1995.

Frank Mondano, Balliro & Mondano, Boston, MA, for plaintiff.

Paul M. Sanford, Flanders & Medeiros, Steven M. Richard, Tillinghast, Collins & Graham, Providence, RI, for Chubb Life Ins. Co., of America.

LASKER, District Judge.

Paul Ferragamo sues Chubb Life Insurance Company of America, alleging that Chubb wrongfully stopped paying him disability benefits under a Chubb disability insurance policy. Ferragamo alleges that Chubb breached, and was negligent in its handling of, the policy, committed violations of M.G.L. c. 93A and both negligently and intentionally inflicted emotional distress on him. On the theory that Chubb has repudiated its obligations, Ferragamo seeks as damages both the amount of benefits that have been withheld since July 1993 and the present value of all future benefits payable under the policy. Chubb moves for partial summary judgment on the grounds that Ferragamo is entitled to, at most, withheld benefits only, is not eligible for the protection of M.G.L. c. 93A and cannot prove the physical harm element of a cause of action for negligent infliction of emotional distress.

The motion is granted to the extent of declaring that Chubb has not repudiated the policy. The motion is denied as to Ferragamo's M.G.L. c. 93A claim and denied as to Ferragamo's cause of action for negligent infliction of emotional distress.

I.

Chubb's predecessor, United Life and Accident Insurance Company, issued a disability insurance policy to Ferragamo in December 1981. Ferragamo owns, operates and—until March 19, 1982, participated in the manual labor attendant to—a scrap metal business. On that date, an accident at work caused severe injuries to Ferragamo's left leg and ankle. As a result of these injuries, Ferragamo alleges that he is incapable of performing virtually all physical tasks associated with his business and, for the most part, he must remain sedentary.

Shortly after his injury, Ferragamo filed a claim with Chubb for monthly benefits based upon his alleged total disability. The Chubb policy provides:

"Total Disability" means that the Insured, due to injury or sickness, can't do all of the main tasks of his or her regular job, and is not working at some other job for pay or profit.

The policy also provides for benefits based on partial disability. As defined in the policy:

"Partial Disability" means that the Insured, due to injury or sickness, can't do all of the tasks of his or her regular job full time, but: (a) can do and is doing some of those tasks; or (b) is working at some other job. At the same time the Insured must be earning at least 20% less than his or her Monthly Earned Income Base [ (which measures the beneficiary's aver-

age monthly income prior to the injury or sickness) ].

Aside from these eligibility rules, the policy is silent as to the conditions under which Chubb must start, and may cease, paying benefits.

Despite the fact that Chubb personnel periodically initiated examinations of Ferragamo's claim in response to suspicions that Ferragamo had found alternative employment and thus was not totally disabled, Chubb paid benefits under the policy from April 1982 until June 1993 in response to monthly reports from Ferragamo indicating that his disability continued to be total.

During the summer of 1993, Chubb became convinced Ferragamo was employed despite being unable to perform the manual tasks that he undertook at his scrap metal yard before his injury. Chubb knew—and Ferragamo did not deny—that he continued to oversee the scrap metal business. In addition, Chubb hired a private investigator who, after observing Ferragamo, concluded that he was operating a real estate construction and development business. In July 1993, Chubb suspended Ferragamo's benefits.

Through counsel, Ferragamo made a formal demand on Chubb to reinstate the payments, a prerequisite to suit under M.G.L. c. 93A. Chubb responded by letter dated October 6, 1993, stating that Chubb was "currently investigating whether Mr. Ferragamo is totally or partially disabled and if partially disabled, what his level of income is." The letter specified that "before any subsequent payments are made to Mr. Ferragamo, we must determine whether Mr. Ferragamo is receiving the correct amount of benefits under either the total or partial disability provisions in his policy." The letter requested certain documents, including tax returns and social security records.

Ferragamo filed suit on December 17, 1993 in Massachusetts state court, seeking damages for breach of contract, negligence, violations of M.G.L. c. 93A, negligent infliction of emotional distress and intentional infliction of emotional distress. Chubb removed the action to this Court.

## II.

Ferragamo alleges that Chubb has repudiated its contract with him by refusing to continue making benefit payments and that, therefore, Chubb is liable for the present value of all future payments under the policy, as well as all amounts that have been withheld. Without disputing that a repudiation of the policy would result in a total breach, which in turn would entitle Ferragamo to the present value of all future payments, Chubb responds that it has not repudiated the policy. At most, Chubb maintains, it has failed to live up to the policy's terms during the period in which it has suspended benefits. If that is in fact the case—and Chubb disputes that it is—the most Ferragamo would be entitled to is the amount that Chubb has failed to pay since July 1993.

Neither party has cited Massachusetts decisions. However, the decision of the United States Supreme Court in *New York Life Insurance Company v. Viglas*, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971 (1936) is a clear guide. There, in a case which is a forerunner of this one, the Court held that an insurance company cannot be held to repudiate an insurance policy when it discontinues benefit payments in the belief that the disability which predicated the benefits had itself ceased. *Id.* at 676, 56 S.Ct. at 616. The Court cited *Mobley v. New York Life Insurance Company*, 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621 (1935), in which, in addressing a claim that an insurance company had repudiated a disability policy, the Court noted that:

> [r]epudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation.... Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy.

295 U.S. at 638, 55 S.Ct. at 878 (citations omitted). The *Viglas* Court held that the damages available in the case of a "mistake or misunderstanding" "do not exceed the benefits in default at the commencement of the suit." 297 U.S. at 678, 56 S.Ct. at 617. In such a case, "[t]he insured, if he proves that the benefits are due, will have a judgment effective to reinstate his policy." *Id.*

■ Although neither *Viglas* nor *Mobley* cited or discussed Massachusetts law, they are persuasive and this case is on all fours with them. Chubb has not contended that its obligations under Ferragamo's policy have ceased. Rather, as shown in its October 6, 1993 letter, Chubb has merely concluded that the condition precedent to its paying Ferragamo total disability benefits—that Ferragamo be totally disabled within the meaning of the policy—no longer exists. Whether or not this is so will be determined at trial. Chubb has never suggested that it was unwilling or unable to pay full disability benefits to Ferragamo as long as, under the terms of the policy, he is entitled to those benefits. Therefore, should Ferragamo prevail at trial, the only damages available to him resulting from the discontinuance of benefits will be the amount of benefits that Chubb has failed to pay as of that date.

### III.

Chubb next contends that Ferragamo's cause of action under M.G.L. c. 93A fails because Ferragamo cannot prove two of the requisite elements of M.G.L. c. 93A, § 11: that he is engaged in a trade or commerce and that the conduct complained of occurred primarily and substantially in the Commonwealth. This portion of Chubb's motion is mooted by this Court's order of May 25, 1995 granting Ferragamo's motion to amend his complaint. The amended complaint revises Ferragamo's cause of action under M.G.L. c. 93A to reflect that he is suing under § 9 rather than § 11. Neither of Chubb's arguments for summary judgment as to his M.G.L. c. 93A claim are applicable to § 9 and his claim stands.

### IV.

■ Chubb's final contention is that Ferragamo has failed to produce any objective evidence that he suffered physical harm as a result of Chubb's alleged negligence, as he must do to sustain his claim for negligent infliction of emotional distress. Ferragamo argues that his own representation, under oath, in response to an interrogatory that he suffered "[h]eadaches, nausea, sleeplessness, loss of appetite [and] loss of weight" is sufficient to require denial of summary judgment.

In *Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171 (1982), the Supreme Judicial Court held that in order to recover for negligently inflicted emotional distress, a plaintiff must prove "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Id.* 437 N.E.2d at 181. In *Sullivan v. Boston Gas Company*, 414 Mass. 129, 605 N.E.2d 805 (1993), the SJC held that a plaintiff who claimed that he had suffered from tension headaches and other symptoms attested to by the affidavit of an examining doctor had submitted sufficient evidence to require the denial of the defendant's motion for summary judgment. Ferragamo states, under oath, that he has suffered headaches, nausea and sleepless. These are the type of physical manifestations of emotional distress recognized by *Payton* and *Sullivan*. The question remains, however, whether Ferragamo's unsupported assertion, sworn though it is, is sufficient to meet the requirement of *Sullivan* that plaintiffs put before the court "enough objective evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial." 605 N.E.2d at 810.

Although the question is not free from doubt, I conclude that Ferragamo's sworn statement is sufficient to meet the requirements of *Sullivan*. The *Sullivan* court itself stated merely that "expert medical testimony *may* be needed" to show physical harm. *Id.* (emphasis added). I conclude that the word "may" should be taken seriously and that it signifies that a doctor's supporting affidavit is not an indispensable requirement to per-

mit the plaintiff's case to proceed. Accordingly, Chubb's motion for summary judgment as to Ferragamo's negligent infliction of emotional distress claim is denied. It is worth noting, however, that should Ferragamo depend solely on his own testimony at trial, the weakness of his case might expose it to dismissal.

\* \* \*

Chubb's motion for summary judgment is granted to the extent of declaring that Chubb did not repudiate Ferragamo's disability insurance policy. The motion is denied as to Ferragamo's M.G.L. c. 93A and negligent infliction of emotional distress claims. It is so ordered.