PAUL P. SULLIVAN & another[1] vs. BOSTON GAS COMPANY.

Suffolk. September 10, 1992. - January 12, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Negligence*, Gas company, Emotional distress. *Emotional Distress. Practice, Civil*, Summary judgment.

Discussion of the physical harm requirement applicable to recovery for negligent infliction of emotional distress, as set forth in *Payton* vs. *Abbott Labs*, 386 Mass. 540 (1982), and review of the physical harm rule in other jurisdictions. [132-137]
On a claim for negligent infliction of emotional distress, the evidence of physical harm required to withstand a defendant's motion for summary judgment is objective evidence of harm corroborating the emotional distress alleged, sufficient to allow a jury to determine the validity of the claim. [137-138]
In an action seeking compensation for emotional distress suffered as a result of the plaintiffs' witnessing the destruction of their house after an explosion and fire caused by the alleged negligence of a gas utility company, the plaintiffs produced sufficient evidence of physical manifestations of mental distress to withstand the defendant's motion for summary judgment. [139-140]

CIVIL ACTION commenced in the Superior Court Department on January 8, 1991.

A motion for partial summary judgment was heard by *Hiller B. Zobel*, J., and a question of law was reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Edward Fegreus* for the plaintiffs.

*John B. Johnson* (*Patricia A. Geran* with him) for the defendant.

[1]Mary J. McDonald.

LIACOS, C.J. On October 2, 1990, a natural gas explosion destroyed the house of Paul P. Sullivan and Mary J. McDonald. Both Sullivan and McDonald looked on from across the street as their home burned to the ground. On January 8, 1991, Sullivan and McDonald filed the present case ·in the Superior Court. Their complaint alleged that the negligence of the defendant, Boston Gas Company (Boston Gas), caused the explosion. The first count of the complaint requested damages for lost property, lost wages, and for other financial expenses related to the explosion. In the second and third counts, Sullivan and McDonald sought compensation for the emotional distress which each claimed to have suffered as a result of the explosion.

Boston Gas moved for partial summary judgment on the emotional distress counts. Boston Gas argued that Sullivan and McDonald did not demonstrate compensable claims for emotional distress, see *Payton* v. *Abbott Labs*, 386 Mass. 540 (1982). Specifically, based on the record, Boston Gas asserted that the plaintiffs could not produce sufficient evidence of "physical harm manifested by objective symptomatology" to corroborate their claims of mental distress. *Id.* at 557.

Before ruling on Boston Gas's motion for partial summary judgment, the judge below conducted a proceeding which the parties have described as a "mini-trial."[2] This proceeding

---

[2]We are given no authority for this procedure in regard to a ruling on motions for summary judgment filed pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974). See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976) (moving party must show by "credible evidence from his affidavits and other supporting materials that there is no genuine issue of material fact and that he is entitled, as a matter of law, to a judgment"). See also *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 713-714 (1991) (summary judgment motion is made in reliance solely on pleadings, depositions, answers to interrogatories, and admissions on file). However, neither party contests the procedure. In our review of the rulings of the judge, we apply the usual standard whereby we credit the record facts most favorable to the party opposing the motion. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied sub nom. *Bailey* v. *Bellotti*, 459 U.S. 970 (1982), quoting *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970) ("When the court considers the materials accompanying a motion for summary judgment, 'the inferences to be drawn from the underlying

purported to determine whether or not McDonald suffered from diarrhea during the year following the explosion. The judge concluded that McDonald did suffer from diarrhea during this time period. He ruled that diarrhea is a "physical, objective symptom" within the meaning of the *Payton* rule, and denied Boston Gas's motion for partial summary judgment with respect to McDonald.

The judge, however, granted Boston Gas's motion with respect to Sullivan. He ruled that Sullivan introduced only "emotional, or mental, or subjective symptoms," which did not satisfy the *Payton* requirement of physical harm. The judge then proceeded to report to the Appeals Court the issue whether the physical harm rule set out in *Payton* had been applied correctly. See Mass. R. Civ. P. 64, 365 Mass. 831 (1974). On the plaintiffs' application, we granted direct appellate review. We now affirm the judge's decision with respect to McDonald and reverse his decision with respect to Sullivan.

The record as to Sullivan's claim of physical harm included a medical affidavit signed by Dr. Walter H. Caskey of Faulkner Hospital. Dr. Caskey stated that Sullivan had suffered from tension headaches related to the emotional stress caused by the explosion. Dr. Caskey also noted muscle tenderness in the back of Sullivan's head. In addition to this affidavit, Sullivan produced a record of a psychological consultation during which he complained of concentration and reading problems. Finally, Sullivan stated in his responses to interrogatories and in his deposition that he had suffered from sleeplessness, gastrointestinal distress, upset stomach, nightmares, depression, feelings of despair, difficulty in driving and working, and an over-all "lousy" feeling allegedly resulting from the explosion.

McDonald, for her part, submitted an affidavit signed by Dr. Bessel A. van der Kolk, the director of the Trauma

---

facts contained in such materials must be viewed in the light most favorable to the party opposing the motion' ").

Clinic.[3] Dr. van der Kolk stated that McDonald had been treated for posttraumatic stress disorder at the Trauma Clinic. Dr. van der Kolk also stated that, prior to being admitted as a patient to the clinic, McDonald had undergone a test designed to measure signs and symptoms of posttraumatic stress disorder and met the diagnostic criteria for this illness. Finally, Dr. van der Kolk reported that McDonald suffered from severe physical symptoms of posttraumatic stress disorder, which sometimes occurred as often as once or twice a week. Although Dr. van der Kolk did not specify the nature of these symptoms, McDonald's answers to the evaluation test revealed that she had complained of diarrhea and heart palpitation. In addition to the medical evidence of her treatment at the Trauma Clinic, McDonald asserted in her responses to interrogatories and in her deposition that she had experienced sleeplessness, weeping, depression, and feelings of despair, allegedly as a result of witnessing the destruction of her house.

In *Payton*, we held that, in order to recover for negligently inflicted emotional distress, a plaintiff must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Id*. at 557.[4] We added

[3]Dr. van der Kolk is also affiliated with Massachusetts General Hospital.

[4]Justice Wilkins, with whom Justice Abrams and the author of this opinion joined, dissented and expressed disagreement with the conclusion of the court that causally related physical harm is a prerequisite to recovery in regard to a claim of negligently inflicted emotional distress. *Payton* v. *Abbott Labs*, 386 Mass. 540, 578-581 (1982). The court's view on this point still prevails, see *DiGiovanni* v. *Latimer*, 390 Mass. 265, 273 (1983) (Liacos, J., concurring). Thus, we confine ourselves today to defining the *meaning* of the *Payton* rule.

Since we decided *Payton*, several courts have reconsidered their position and abandoned the physical harm requirement. See, e.g., *Bass* v. *Nooney Co.*, 646 S.W.2d 765, 772-773 (Mo. 1983); *St. Elizabeth Hosp.* v. *Garrard*, 730 S.W.2d 649, 654 (Tex. 1987); *Gates* v. *Richardson*, 719 P.2d 193, 200 (Wyo. 1986). These new judicial pronouncements confirm that this field is still one "clearly in a process of growth, the ultimate limits of which cannot as yet be determined." *Leong* v. *Takasaki*, 55 Haw. 398, 402 (1974), quoting W. Prosser, Torts § 12, at 50 (4th ed. 1971). The

the physical harm requirement to the traditional elements of negligence for several reasons. First, we feared that allowing recovery for mental harm alone might result in a flood of fraudulent claims. *Id.* at 555. Second, we expressed concern that even honest plaintiffs erroneously might convince themselves that they suffer from emotional distress as a result of the negligence of others, thereby compounding the problem of fraudulent lawsuits. *Id.* at 547. Finally, we reasoned that the unintentional nature of the defendant's tortious conduct justified the imposition of an additional legal burden on the plaintiffs. *Id.* at 553-557. Cf. *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144 (1976) (no proof of physical harm required for recklessly or intentionally inflicted emotional distress).

We based our decision in *Payton* on an extensive review of the historical evolution of this area of the law which we need not repeat here. It suffices to say that we described the various limitations on recovery for mental harm which the courts traditionally have imposed, and decided to retain the physical harm rule. *Payton, supra* at 557. The plaintiffs in the present case suggest that we should overrule *Payton* and allow the tort of negligent infliction of emotional distress to operate without artificial restrictions. The plaintiffs find support for this suggestion in the recent decisions that have eliminated the physical harm rule on the ground that, like the other traditional limitations on recovery for mental harm, this rule arbitrarily infringes upon the right of plaintiffs to obtain redress for the invasion of a recognized legal interest. See *Culbert* v. *Sampson's Supermarkets Inc.*, 444 A.2d 433, 437 (Me. 1982); *Bass* v. *Nooney Co.*, 646 S.W.2d 765, 772-773

---

author of a jurisdictional survey of this area of the law introduced his article with the warning that "[t]he case law in the field here treated is in an almost unparalleled state of confusion and any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity." Comment, Negligent Infliction of Emotional Distress: A Jurisdictional Survey of Existing Limitation Devices and Proposal Based on an Analysis of Objective Versus Subjective Indices of Distress, 33 Vill. L. Rev. 781, 781 (1988). We adhere to the *Payton* requirement because, in our view, the record in this case requires us to go no further.

(Mo. 1983); *St. Elizabeth Hosp.* v. *Garrard*, 730 S.W.2d 649, 654 (Tex. 1987); *Gates* v. *Richardson*, 719 P.2d 193, 200 (Wyo. 1986). Further, the plaintiffs argue that the States that abandoned the physical harm rule have not witnessed abnormal increases in litigation. See, e.g., *James* v. *Lieb*, 221 Neb. 47, 59 (1985) (noting that experience shows that courts have not been overwhelmed with litigation in this field).[5]

We note the criticism leveled against the rule which we adopted in *Payton*. We also note that the historical trend has led courts to weigh the concern for the unjust denial of claims more heavily than the fear of fraudulent actions. However, we agree with the Supreme Court of Alabama that "broad pronouncements in this area may have to bow to the precise application of developing legal principles to the particular facts at hand." *Alabama Great S.R.R.* v. *Jackson*, 587 So.2d 959, 963 (Ala. 1991), quoting *Atchison, Topeka & Santa Fe Ry.* v. *Buell*, 480 U.S. 557, 568-570 (1987) (Federal Employers' Liability Act). Sound principles of common law evolve out of the interaction of the infinite variety of new patterns of human activity with principles crafted in response to already-experienced situations. A careful review of the interpretation of the physical harm rule in other jurisdictions leads us to believe that we may refine this rule so as to achieve a just result in this case and to strike a proper balance between the fear of fraudulent claims and the danger of shutting the doors of the courthouse to worthy plaintiffs.

The courts that have applied the physical harm rule to particular symptoms have confronted serious definitional difficulties. Physicians themselves often cannot distinguish between the mental and the physical aspects of an emotional disturbance. Modern medicine shows that all emotional disorders have physical ramifications, while all physical illnesses have emotional aspects. See Comment, Negligently Inflicted

---

[5]To the contrary, some courts have noted that the physical harm rule "encourages extravagant pleading and distorted testimony." *Culbert* v. *Sampson's Supermarkets Inc.*, 444 A.2d 433, 437 (Me. 1982), quoting *Molien* v. *Kaiser Founds.*, 27 Cal.3d 916, 929 (1980).

Mental Distress: The Case for an Independent Tort, 59 Geo. L.J. 1237, 1241 & n.24 (1971), and authorities cited. Judges, then, cannot sit as "super doctors" and cannot classify ailments along physical versus mental lines while the progress in medical sciences inextricably links these two realms of human physiology. On a record such as in this case, such matters are better left to a jury, to be decided on expert medical testimony. Indeed, the complexity of the medical understanding of tension headaches would preclude us from concluding on appeal that they are purely physical or mental. See Merck Manual of Diagnosis & Therapy 1351-1355 (15th ed. 1987); Mosby's Medical Dictionary 1154 (3d ed. 1990) (listing both physical and mental causes for headaches such as the contraction of blood vessel walls, overwork, and emotional strain).[6]

Courts have attempted to extricate themselves from this definitional quagmire by resorting to evidentiary concepts designed to provide guidance to fact finders evaluating a plaintiff's symptoms. The Restatement (Second) of Torts (1965), for instance, rejects the distinction between the physical and mental aspects of a particular symptom as a basis for defining the physical harm requirement. The Restatement explains that mental disturbances such as repeated hysterical attacks are illnesses sufficient to corroborate the existence of mental distress. Hence, these mental disturbances qualify as physical harm. Restatement (Second) of Torts § 436A comment c (1965). The Restatement further explains that symptoms such as headaches or nausea could qualify as sufficient evidence of physical illness if they lasted for a substantial period of time. On the other hand, the Restatement does not consider transient symptoms such as vomiting to amount to

---

[6]The impossibility of distinguishing between physical and mental symptoms of diseases for purposes of a legal standard has frustrated the courts so deeply that many judges cited to this problem as being itself a ground for abolishing the physical harm rule altogether. See *Bass, supra* at 771-772.

physical harm, even though they clearly involve physical functions of the body. *Id*.[7]

The highest court of Maryland interpreted its physical harm requirement to require sufficient objective evidence that the alleged mental distress was not feigned. In *Vance* v. *Vance*, 286 Md. 490, 500-501 (1979), the Court of Appeals explained that the application of the physical harm rule did not revolve upon a distinction between the physical and mental aspects of a particular symptom of mental distress. Rather, the court construed the term "physical" to refer to harm "capable of objective determination." *Id*. at 500. The *Vance* court held that plaintiffs could prove the requisite harm by introducing evidence of an "external condition," of a "mental state," or of a "pathological or physiological state." *Id*. The plaintiff in *Vance* suffered from symptoms of an ulcer, as well as from sleeplessness, inability to socialize, a deterioration of her physical appearance, and symptoms of depression. The court found that these symptoms were sufficient evidence of genuine mental distress. *Id*. at 501.[8]

The Supreme Court of New Hampshire similarly has construed its physical harm requirement to revolve around the existence of sufficient objective evidence of harm. In *Corso* v. *Merrill*, 119 N.H. 647 (1979), the court allowed the plaintiffs who alleged that they suffered from depression as a result of their mental distress to "prove through the testimony

---

[7]Thus, the Restatement introduces the time period during which a plaintiff's symptoms manifest themselves as an important factor in determining whether a plaintiff's mental distress has been corroborated sufficiently. By doing so, the Restatement attempts to generate a legal standard against which the trier of fact may assess whether certain symptoms offer sufficient indicia of the genuineness of a plaintiff's mental harm. Applying this general standard, the trier of fact may then use the available medical or psychiatric expert evidence to draw a conclusion as to the sufficiency of this evidence. Restatement (Second) of Torts § 436A comment c (1965). While the passage of time may be a factor in determining whether the claim of emotional distress is genuine, we do not adopt today a rigid rule based on such considerations.

[8]The court also ruled that no expert testimony with respect to the existence of these symptoms would be required. *Vance* v. *Vance*, 286 Md. 490, 500 (1979).

of medical witnesses that their psychic injury was susceptible [of] objective medical determination." *Id.* at 658. The court cited with approval *Petition of the U.S. as Owner of the U.S. Coast Guard Vessel CG 95321*, 418 F.2d 264 (1st Cir. 1969), a case where the court held that an objective medical determination that a plaintiff suffered from a nervous disorder would bring this disorder within the "physical injury" language of an admiralty rule. *Id.* at 269. Thus, it appears that in New Hampshire the physical harm requirement is defined so as to mean that plaintiffs must corroborate their mental distress claims with sufficient medical evidence of harm.

In *Anderson* v. *W.R. Grace & Co.*, 628 F. Supp. 1219 (D. Mass. 1986), the court applied our *Payton* standard along these lines. Faced with a list of ailments that included headaches and diarrhea, the court held that the physical damage required by *Payton* need not be "immediately apparent." *Id.* at 1227. Rather, the court construed *Payton* to require that the existence of the necessary harm be "objectively evidenced" and substantiated by expert medical testimony. *Id.* The court concluded that the plaintiffs' introduction of a physician's affidavit which attested to the existence of the alleged ailments precluded the entry of summary judgment in favor of the defendant. *Id.*

*Anderson* provides an accurate application of our *Payton* standard. In order to satisfy *Payton*, plaintiffs must provide an "objective corroboration of the emotional distress alleged." *Payton, supra* at 547. A successful negligent infliction of emotional distress claim, in other words, must do more than allege "mere upset, dismay, humiliation, grief and anger." *Corso, supra* at 653, quoting Comment, Negligence and the Infliction of Emotional Harm: A Reappraisal of the Nervous Shock Cases, 35 U. Chi. L. Rev. 512, 517 (1968). Cf. *Payton, supra* at 555 (physical harm requirement serves "to limit frivolous suits and those in which only bad manners or mere hurt feelings are involved"). Rather, plaintiffs must corroborate their mental distress claims with enough objec-

tive evidence of harm to convince a judge that their claims present a sufficient likelihood of genuineness to go to trial.

Expert medical testimony may be needed to make this showing. Medical experts, however, need not have observed an actual, external sign of physical deterioration. *Anderson, supra* at 1227. They may consider, in the exercise of their professional judgment, the plaintiffs' description of the symptoms they experience. *Id.* The judge, then, will need to consider each case in its particular factual context. The length of time during which the physical harm manifested itself may provide a reliable indicator of the sufficiency of the evidence introduced. Restatement (Second) of Torts § 436A comment c (1965). Generally, though, the judge will use his or her discretion to evaluate the evidence, keeping in mind that the over-all goal is to determine whether the evidence sufficiently corroborates the plaintiff's claim of mental distress and to strike a wise balance between the fear of fraudulent claims and the danger that worthy claims will not be heard. See *Payton, supra* at 553.[9]

---

[9]We construe *Payton* to require sufficient objective evidence of harm because the physical harm rule purports to address a problem of *proof*. See *St. Elizabeth Hosp.* v. *Garrard*, 730 S.W.2d 649, 654 (Tex. 1987). The *Payton* court was concerned with the difficulty inherent in evaluating the genuineness of mental injury claims, and it sought to sift out undeserving lawsuits by requiring that "harm to the bodies of the plaintiffs" be proved as "a predicate to suit." *Anderson* v. *W.R. Grace & Co.*, 628 F. Supp. 1219, 1226 (D. Mass. 1986), quoting *Payton, supra* at 545-546 n.4. Our holding in the present case, then, is guided by the evidentiary nature of the problem with which the *Payton* court dealt.

The definition of the terms "physical harm" or "harm to the body" in the context of the *Payton* rule does not affect in any way the treatment of the terms "harm" or "injury" in other areas of the law. We have, for instance, construed the words "bodily injury" in an insurance policy to exclude the coverage of mental pain, and to encompass only "physical injuries to the body and the consequences thereof." *Allstate Ins. Co.* v. *Diamant*, 401 Mass. 654, 656 (1988). See *Pinheiro* v. *Medical Malpractice Joint Underwriting Ass'n of Mass.*, 406 Mass. 288, 291 n.3 (1989). We have also distinguished between the words "harm" and "injury" for purposes of interpreting the injury requirement of G. L. c. 93A, § 9 (1990 ed.). See *Leardi* v. *Brown*, 394 Mass. 151, 160 (1985) (defining injury as the "invasion of a legally protected interest"). Unlike *Payton*, cases such

With respect to the case at bar, we hold that both plaintiffs produced sufficient objective evidence of physical manifestation of mental distress to survive a summary judgment motion.[10] Indeed, many courts have held — without much elaboration — that symptoms such as those alleged here present enough evidence of physical harm to corroborate a mental distress claim. The Supreme Court of Idaho, for instance, held that severe headaches, occasional suicidal thoughts, sleep disorders, reduced libido, fatigue, stomach pains, and loss of appetite were sufficient physical symptoms of emotional injury to send a case to trial. *Czaplicki* v. *Gooding Joint Sch. Dist. No. 231*, 116 Idaho 326, 332 (1989). Likewise, the Minnesota Court of Appeals held that a plaintiff who experienced headaches, insomnia, loss of appetite and muscle tension for several months had satisfied the physical harm requirement. See *Silberstein* v. *Cordie*, 474 N.W.2d 850, 857 (Minn. Ct. App. 1991). See also *Wright* v. *Coca Cola Bottling Co. of Central S.D.*, 414 N.W.2d 608 (S.D. 1987) (plaintiff who alleged symptoms of diarrhea, bitter taste, and regurgitating satisfied the physical harm requirement).

Courts, thus, have construed the physical manifestation standard to include symptoms such as headaches or diarrhea, as well as ailments which impair a person's daily life such as those alleged by the plaintiffs here. Underlying the judicial decisions qualifying these symptoms as physical manifestations of harm, we perceive the judgment that they present enough objective evidence to allow the jury to determine the

---

as *Allstate* or *Leardi* did not involve problems of proof or corroboration of mental distress claims. Today's decision does not affect those cases.

[10]This holding in no way contradicts prior cases such as *Nancy P.* v. *D'Amato*, 401 Mass. 516, 518 (1988) (judge found that plaintiffs suffered no physical injury), *Santana* v. *Registrars of Voters of Worcester*, 398 Mass. 862, 864 (1986) (judge found that plaintiffs suffered no physical or emotional injury), *Bernard* v. *Cameron & Colby Co.*, 397 Mass. 320, 323 (1986) (no evidence of physical harm alleged), or *DiGiovanni* v. *Latimer*, 390 Mass. 265, 270 (1983) (no causal connection between tortious conduct and emotional distress, and no evidence that plaintiff suffered any physical harm).

validity of the claims of mental distress. Again, the plaintiffs in the present case produced enough evidence to meet this burden, including expert medical opinion linking their symptoms to the explosion.[11] Further, the nature of the incident that caused the plaintiffs' alleged mental distress corroborates the genuineness of their claims. Both McDonald and Sullivan witnessed the destruction of their home, an occurrence which the American Psychiatric Association lists as one of the most common causes of posttraumatic stress disorders. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 247-251 (3d ed. rev. 1987). Finally, some of the symptoms which McDonald and Sullivan alleged, such as headaches, concentration problems, or sleeplessness, correspond to common manifestations of posttraumatic stress disorder. *Id.* at 248.

In giving McDonald and Sullivan a chance to have their day in court, we further *Payton*'s search for a rule "by means of which claims for emotional distress damages [can] be differentiated." *Payton, supra* at 553. On the facts of this case, we believe that our decision strikes a just balance between our desire to ferret out fraudulent claims and our duty to grant deserving plaintiffs a chance to present their case to a fact finder. Therefore, we affirm the judge's denial of summary judgment with respect to McDonald and reverse the entry of summary judgment against Sullivan. Both plaintiffs may attempt to establish at trial that they satisfied the physical manifestation requirement of *Payton* v. *Abbott Labs*, as well as the other elements of a cause of action for emotional distress which we set out in that case.

*So ordered.*

---

[11] The defendants point out that the judge made no finding with respect to the causal link between the explosion and McDonald's diarrhea. Treating the matter, as we have, to be a report as to the validity of the judge's rulings on motions for summary judgment, we rely on the record before the judge and not his findings. See note 2, *supra*.