Smith, J.
Plaintiff brought actions for negligence, breach of contract and negligent infliction of emotional distress based on defendant’s delivery of oil to a defective tank, which damaged plaintiffs property. Plaintiff has moved for summary judgment on these three claims. Defendant has moved for summary judgment on the contract and emotional distress claims, as well as two issues relating to damages.
BACKGROUND
Plaintiff Adriana H. Christopher is the record owner of the multi-family residential property in Woburn that is the subject of this action and has been at all times pertinent to this action. The property was acquired by Peter Christopher and others in 1987. Adriana and Peter Christopher are currently married, but were not at the time of events relevant to this action. The plaintiff acquired an interest in the properly and became its sole owner in 1993.
As a result of zoning ordinances adopted by the Woburn City Council in 1970 and 1985, the zoning district occupied by the property allows multi-family residential dwellings by Special Permit only. In 1989, the City Council refused to grant Peter Christopher such a Special Permit. Without appealing this ruling, Christopher continued to operate the property as a four-unit apartment building, leasing all four emits until March of 1994. Plaintiff contends that the City of Woburn has taxed and billed the property as a four-unit property, but has not supported this assertion with records or affidavits.
Defendant Glen-Mor Fuel Oil Company is a Massachusetts corporation that delivers heating oil to residential and commercial properties throughout the eastern part of the state.
In late 1993, Peter Christopher contacted defendant and stated there was no heat in the property. Two of defendant’s representatives inspected the oil burner and oil storage tank located on the right side of the property. Tyrone Shauan, one of defendant’s representatives, informed Christopher that the tank had failed and that a new tank needed to installed. In the meantime, Mr. Shauan recommended the installation of a temporary tank. Christopher agreed, and the temporary tank was delivered and installed the same day on the left side of the properly.
The parties disagree on what, if any, arrangements were then made between them with regard to installation of a permanent tank. Defendant claims that Shauan offered to remove the damaged tank and install a new tank, and told Christopher this would cost $850.00. Christopher then told Mr. Shauan that he wanted to “shop around” for a better price, and no further arrangements were made, defendant contends.
Plaintiff states that on the day of Shauan’s visit, Christopher in fact signed a work order authorizing defendant to replace the old tank with a new one. Plaintiff asserts that Christopher’s subsequent calls to defendant regarding the progress of this project elicited no information. Ultimately, a permanent tank was installed by another company prior to the incident giving rise to this action.
*179 However, the parties agree that defendant continued to make oil deliveries to the Christopher property, placing the oil in the temporary tank. On March 10, Mr. Christopher telephoned defendant and requested a deliveiy to the now-installed permanent tank on the left side. Defendant agrees that the March 10 delivery was supposed to have been placed in the new left-side tank.
However, the old, defective tank remained in place on the right side of the property. Glen-Mor representative Kenneth Clancy, believing he was delivering oil to the proper tank, filled the old tank with 147.8 gallons of heating oil. The oil flowed out of the bottom of the old tank and seeped into the soil underneath and around the tank. It also caused damage to at least one of the residential units in the property, displacing tenants.
Following the accident, defendant hired a building contractor to repair the damaged unit. However, Woburn Building Commissioner Steven Paris denied the contractor’s application for a permit to reconstruct the unit after concluding the Christopher property was in violation of zoning regulations and was not a lawful four-unit structure.
DISCUSSION
A. Defendant’s motion for partial summary judgment
Defendant has moved for summary judgment on the plaintiffs claims of breach of contract and negligent infliction of emotional distress. Additionally, defendant has moved for summary judgment on plaintiffs assertions that it should recover lost rental income for one of the apartments in the building, and lost income for Peter Christopher.
In order to be entitled for Summary Judgment a party must show, based upon the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56; Community National Bank v. Dawes, 369 Mass. 550, 553-56 (1976). The burden is on the moving party to demonstrate with admissible evidence that there is no genuine issue as to any material fact. Godbout v. Cousens, 396 Mass. 254, 261 (1985). Finally, “a party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party meets its burden, the burden shifts to the nonmoving party “to show with admissible evidence the existence of a dispute as to material facts.” Godbout v. Cousens, 396 Mass. 254, 261 (1985). Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c).
1. Duplicative Claims
Defendant claims that plaintiffs contract claim should be dismissed because it is duplicative of her negligence claim, and cites several cases as standing for this proposition. The principal case cited, Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818 (1985), involved a situation where a plaintiff attempted to circumvent a statute of limitations governing tort claims by recasting a tort claim as a contract action, which would survive under a longer limitations period. To determine which statute applied, the court looked to “the gist of the action” and held that the tort statute of limitations was applicable, thus barring the contract claim as well. Anthony’s Pier Four, 396 Mass. at 823.
No statute of limitations is at issue here, making Anthony’s Pier Four inapposite. Defendant has pointed to no case holding that a plaintiff may not bring both tort and contract claims arising from the same incident. In fact, the opposite appears to be true. Hendrikson v. Sears, 365 Mass. 83, 84 (1974) “([u]nder our traditional practice, a plaintiff may elect to bring either an action of contract or an action or tort . . . but he need not choose between the two labels”).
2. Negligent Infliction of Emotional Distress
Defendant also moves for summary judgment on plaintiffs claim for negligent infliction of emotional distress. A plaintiff seeking to recover for negligent infliction of emotional distress must show physical harm manifested by objective symptomatology. Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1993).[1] The concept of physical harm poses a certain “definitional quagmire,” Sullivan, 414 Mass. at 135, since ailments such as headaches, insomnia and decreased libido are difficult to characterize as physical or mental. Id. at 134-35. In Sullivan, a plaintiffwho witnessed the destruction of his home by a natural gas explosion subsequently suffered headaches, muscle tenderness, concentration and reading problems, sleeplessness, gastrointestinal distress, depression, and other similar symptoms. The Court, while finding such allegations sufficient to satisfy the requirement of physical harm, also held a plaintiff must present “objective evidence of harm” through expert testimony or other means. Id. at 139.
Here, plaintiff alleges that the accident made her suffer “trouble eating and sleeping . . . headaches, stomach aches, and extreme tension and nervousness” (Affidavit of Adriana H. Christopher, P. 2). It is not clear that plaintiff presents enough evidence of physical harm to satisfy Sullivan. The list of ailments presented here, while in some ways similar to those presented in Sullivan, are not nearly as detailed or numerous.
*180 But even assuming arguendo that plaintiff could satisfy the Sullivan definition of physical harm, she has failed to substantiate that harm. The only objective evidence put forth to substantiate the harm is a very brief excerpt from a deposition of one Ronald Fleming, a social worker, which states that “[plaintiffs] distress results in sleep disturbance, weeping at times and occasionally not wanting to go to work.” Mr. Fleming, however, is not a physician or otherwise competent to provide the “expert medical testimony” necessary to support the plaintiffs claim.[2] The court in Payton plainly held that the objective symptomatology must be “substantiated by expert medical testimony.” Id. at 556. The plaintiff cannot rely on her pleadings. She must come forward with admissible evidence showing the existence of a dispute as to material facts. By falling to come forward with medical expert affidavits in support of her assertion that she suffered harm, there is no reasonable expectation that she would recover on her emotional distress claim. Therefore, plaintiffs claim for negligent infliction of emotional distress must also be dismissed.
3. Certain Damages Claims
a. Lost Rental Income
Defendant also moves for summary judgment on plaintiffs claim that she is due lost rental income for the unit that was damaged by the accident.[3] This is not a separate claim, but an element of the damages sought by plaintiff pursuant to either the breach of contract or the negligence claims.
Defendant argues that since the property was maintained as a four-unit structure in violation of Woburn zoning regulations, plaintiff may not recover lost rental income. This argument is persuasive. The record shows that Christopher was denied a Special Permit to operate the property as a four-unit residence, and yet continued to do so. Operation of the house as a four-family rental dwelling without a Special Permit constituted an illegal use. Further, the City of Woburn, in denying a construction permit for repairs on the unit following the accident, confirmed that the structure does not conform to the zoning code.
Plaintiff argues that the city, by taxing and billing the property as a four-unit property, signaled its approval of the nonconforming use. This sounds like an estoppel argument. There is no support for this contention in the summary judgment record, and even if there were it would not influence the outcome since generally, the doctrine of estoppel is not applicable against the government in the exercise of its public duties or against the enforcement of a statute. Gamache v. Mayor of North Adams, 17 Mass.App.Ct. 291, 294 (1983). Estoppel is not applied to government acts where to do so would frustrate a policy intended to protect the public interest. LaBarge v. Chief Admin. Justice of the Trial Court, 402 Mass. 462, 468 (1988). Application of equitable estoppel here would defeat the important public interest in regulating the use of structures through the zoning laws for the health, safety, and benefit of the public.
Thus, this court finds the fact that the Christopher property violated zoning regulations to be dispositive. The fact that other departments of the City of Woburn treated the property as a four-unit property in no way estops Woburn zoning officials from finding the use to be illegal. To rule otherwise would be to reward the plaintiff for his violation of zoning regulations. Thus, plaintiff may not recover for rental income lost as a result of damage to the unit.
b. Lost Income Damages for Peter Christopher
Finally, defendant moves for summary judgment on plaintiffs claim that she is due damages for Peter Christopher’s lost income and the value of his time coordinating the remediation effort following the spill. This issue can be disposed of quickly, since the plaintiff has failed to come forward with any affidavits or to point to any of the discovery or any Rule 56(c) materials which supports her claim that she suffered any expense, present, past or future, for the efforts of Peter Christopher or that Peter Christopher suffered any lost wages or lost compensible time.[4] It is undisputed that plaintiff did not pay Christopher for his work. Christopher’s alleged efforts resulted in no loss to the plaintiff. There is no evidence that she hired Peter Christopher to manage her property or that he ever billed her for such activities. When challenged about whether she suffered any out-of-pocket losses in compensating Peter Christopher for his efforts in managing the property, the plaintiff was bound to come forward with affidavits or other Rule 56(c) materials to withstand the summary judgment motion. The plaintiff has failed to do so. Thus, summary judgment is appropriate on this damage issue.
B. Plaintiffs Motion for Partial Summary Judgment
This court will now address plaintiffs motions for summary judgment on the portions of the complaint that survive: the negligence and contract claims.
1. The Negligence Claim
It is a clear principle of Massachusetts law that negligence is usually a question of fact for the jury. Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984); Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983). There are factual matters in dispute here with regard to plaintiffs negligence claim that a jury must resolve. The parties differ on whether Christopher authorized defendant to replace the defective tank that was ultimately a cause of the accident. Defendant asserts that plaintiffs failure to repair the tank in a timely fashion violated 527 CMR 9.07(H)(2), which requires an owner of an abandoned tank to take certain safety precautions. Since the violation of a safety statute is evidence of negligence as to consequences the statute was intended to prevent, Irwin v. Town of Ware, 392 Mass. 745, 765 (1984), this allega *181 tion also raises factual issues regarding plaintiffs possible comparative negligence. The factual questions raised are inextricably linked to all elements of the prima facie case of negligence: duty, breach, causation and damages. Hence, plaintiffs motion must be denied.
2. The Contract Claim
Plaintiff also seeks summary judgment on its contract claim. From plaintiffs complaint and supporting memoranda, it is difficult to discern how, if it at all, the contract claim differs from the negligence claim. If the elements are identical, the same factual issues would arise, making summary judgment again improper. The plaintiffs memorandum does not state, for example, whether an express warranty existed in the contract; this is crucial to whether the elements of a tort and contract claim would be identical. By failing to discuss the contract claim in any detail, the plaintiff, the moving party, fails to demonstrate the absence of any factual dispute.
ORDER
It is therefore ORDERED that defendant’s motion for partial summary judgment be ALLOWED with regard to Count III (negligent infliction of emotional distress) and with regard to plaintiffs damages claims for lost rental income from Unit D and lost income to Peter Christopher; and DENIED with regard to Count II (Breach of Contract).
It is further ORDERED that plaintiffs motion for partial summary judgment be DENIED.

As the Supreme Judicial Court stated more fully in Payton v. Abbott Labs, 386, 540, 556 (1982):
We therefore conclude, on the basis of the preceding analysis, that in order for any of these plaintiffs to recover for negligently inflicted emotional distress, she must allege and prove she suffered physical harm as a result of the conduct which caused the emotional distress. We answer, further, that a plaintiffs physical harm must either cause or be caused by -the emotional distress alleged, and that the physical harm must be manifested by objective symptomatology and substantiated by expert medical testimony.

It appears that the plaintiff has been treated by a clinical psychologist, Dr. John Levine. However, the plaintiff did not submit an affidavit from Dr. Levine to attempt to substantiate her harm. In any event, it is not clear from the submissions that Dr. Levine would be competent to give the required expert medical opinion.

Neither this nor the next element of damages discussed by the court is spelled out in plaintiffs complaint or papers. Since defendant has moved for summary judgment on these issues, however, this court will rule on them.

The plaintiff has not cited to this Court any authority for the proposition that a nonparty is entitled to his lost income damages (or any other damages) from the defendant. If Mr. Christopher has a claim against defendant Glen-Mor, then he should attempt to file a civil action. Of course, the plaintiff is entitled to recover any cost she incurred, such as management costs, as the result of the breach of contract or the negligence of the defendant (if such liability is proven) but in the context of a summary judgment motion, she must come forward with evidence of such costs.