Hamlin, J.
The plaintiffs, Brigitte and Peter Moesta, have brought a medical malpractice action against Defendant John Deloge, M.D. (“Dr. Deloge"), Women’s Specialists of Framingham, Inc. (“Women’s Specialists”) , Aubrey Milunsky, M.D. (“Dr. Milunsky”), and the Center for Human Genetics, Inc. (“the Center”). The plaintiffs claim that they aborted a healthy 22-week-old male fetus as a direct result of the defendants’ negligent genetic counselling and misdiagnoses. They seek damages for emotional distress and the loss of the companionship and services of their son. In addition, Plaintiff Peter Moesta seeks damages for the loss of the consortium of his wife, Brigitte.
Dr. Milunsky now moves for summary judgment pursuant to Mass.R.Civ.P. 56(c) as to Counts XI, XII, XIII, and XIV of the amended complaint on two grounds: 1) that the plaintiffs’ alleged damages are not compensable because the fetus was not viable at the time of the abortion; and 2) that the plaintiffs have not presented evidence of a substantial physical injury as the manifestation of their alleged emotional distress. For the reasons set forth below, Dr. Milunsky’s motion is ALLOWED in part and DENIED in part.
BACKGROUND
The following facts are undisputed. In June 1990, Mrs. Moesta was pregnant with her fourth child. She began receiving prenatal care from Dr. Deloge. On August 14, 1990, Mrs. Moesta, who was 35 years old, underwent an amniocentesis to screen for chromosomal defects. Based on the amniotic fluid collected, the sex of the fetus was indeterminable.
Dr. Deloge then forwarded the amniotic fluid to Dr. Milunsky at the Center for further analysis. On September 5, 1990, Mr. and Mrs. Moesta met with Dr. Milunsky for genetic counselling.[3] Thereafter, on September 10, 1990, the Center issued a report signed by Dr. Milunsky and Dr. Herman E. Wyandt, Director of Cytogenetics, which stated that “[a]ll cells analyzed from [amniotic fluid] sample have a minute, centric fragment in place of an X or Y chromosome, indicating Turner syndrome or, if male, the possibility of infertility or ambiguous genitalia.”[4]
Mr. and Mrs. Moesta decided to terminate the pregnancy.[5] On September 11, 1990, Mrs. Moesta was admitted to Bay State Medical Center for a therapeutic abortion. An ultrasound revealed the gestational age of the fetus at 22.2 weeks. On September 12, 1990, Mrs. Moesta delivered a stillborn male fetus, Baby Boy Moesta.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material facts and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the summary judgment record entitles the moving party to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts..” LaLonde v. Eisnner, 405 Mass. 207, 209 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates *336 summary judgment in favor of the moving party. Kourouvacilis, supra, at 711 (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
A. Wrongful Death Claim
Dr. Milunsky initially argues that Mr. and Mrs. Moesta’s wrongful death claim must fail because Baby Boy Moesta was not viable at the time of the therapeutic abortion. Relying solely on an ultrasound taken before the abortion, Dr. Milunsky states that Baby Boy Moesta was not viable as a matter of law because his gestational age was 22.2 weeks. Mr. and Mrs. Moesta contend that there is a four-week margin of error in measuring viability, an issue which, therefore, must be resolved by the trier of fact.
As a preliminary matter, this court finds that Mr. and Mrs. Moesta have indeed filed a wrongful death claim for the loss of Baby Boy Moesta. Under the wrongful death statute, G.L.c. 229, §2 (1996 ed.), “[a] person who (1) by his negligence causes the death of a person . .. shall be liable in damages in the amount of (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered . . . including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to damages recovered . . .” In their answers to the interrogatories, both Mr. and Mrs. Moesta recite the wrongful death statute almost verbatim in describing the injuries they allegedly suffered due to Dr. Milunsky’s negligence. Thus, this court shall treat their claim for the loss of Baby Boy Moesta as one for wrongful death.
The wrongful death statute compensates survivors for the loss of the decedent’s life. Miga v. Holyoke, 398 Mass. 343, 352 n.10 (1986). Survivors may recover under the statute if “the decedent had, or was capable of having an independent life.” Thibert v. Milka, 419 Mass. 693, 695 (1995). Recovery is available for the death of a fetus if it was either bom alive, irrespective of viability, or was viable at the time of injury, even if not bom alive. Id. Massachusetts permits compensation for the death of a fetus viable at the time of injury because it was capable of surviving independent of its mother. Id.
A viable fetus is one “so far formed and developed that if then born it would be capable of living.” Keyes v. Construction Serv., Inc., 340 Mass. 633, 637 (1960). At viability, the fetus is “potentially able to live outside the mother’s womb, albeit with artificial aid” and “presumably has the capability of meaningful life outside the mother’s womb.” Commonwealth v. Edelin, 371 Mass. 497, 501 (1976), quoting Roe v. Wade, 410 U.S. 113, 160, 163 (1973). While viability is usually placed at 28 weeks gestation, it may occur as early as 24 weeks. Roe, 410 U.S. at 160. Further, although it recognized that 231/2 weeks gestation is the earliest point of viability, the United States Supreme Court stated that there is a “4-week error in estimating gestational age." Webster v. Reproductive Health Serv., 492 U.S. 490, 515-16 (1989). Therefore, viability is a factual issue based not only on gestation but also on the development of the particular fetus. Santana v. Zilog, Inc., 95 F.2d 780, 782 n.2 (9th Cir. 1996).
Although Massachusetts courts have not addressed this precise issue, the United States Supreme 'Court recognized that doctors consider several factors in determining viability. Colautti v. Franklin, 439 U.S. 379, 395 (1979). Such factors include, but are not limited to, gestational age, fetal weight, the woman’s health and nutrition, and the quality of available medical facilities. Id. at 395-96. However, the Court has made it clear that viability is not determined by one particular factor “be it weeks of gestation or fetal weight or any other single factor ...” Id. at 388-89. Following this mandate, some courts have declined to determine whether a fetus is viable based on one single factor. See Wade v. United States, 745 F.Sup. 1573, 1580 (D. Haw. 1990) (finding that 19 or 20 weeks gestation insufficient alone to conclude that fetus not viable); Franzen v. CSX Transp., 1992 WL 377074, at *3 (6th Cir. Dec. 18, 1992) (see attached Appendix A) (finding that length of gestation as well as physical characteristics of fetus created issue of fact on question of viability).
In the instant case, in support of his motion, Dr. Milunsky produced Mrs. Moesta’s medical records, which reflect that the fetus’s gestational age was 22.2 weeks at the time of the abortion. Other than the gestational age, however, he has not produced evidence of other indicators, such as Mrs. Moesta’s health or fetal weight, which also measure viability. Therefore, on the present record, this court is unable to state that Baby Boy Moesta was not viable as a matter of law. Hence, Dr. Milunsky’s motion for summary judgment on the wrongful death claim must be denied.
B. Emotional Distress Claims
Dr. Milunsky also moves for summary judgment on Mr. and Mrs. Moesta’s claims for negligent infliction of emotional distress. To recover for negligent infliction of emotional distress, plaintiffs must prove: “(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.” Sullivan v. Boston Gas Co., 414 Mass. 129, 132 (1993), quoting Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). Dr. Milunsky argues that summary judgment is appropriate because Mr. and Mrs. Moesta have not suffered any physical injuries as the result of losing Baby Boy Moesta.
The Supreme Judicial Court mandates that the physical harm requirement of a negligent infliction of emotional distress claim be corroborated by objective symptomatology and substantiated by expert medical *337 testimony. Payton, 386 Mass. at 556. In Sullivan, for instance, the Court found that such symptoms as weeping, headaches, diarrhea, “sleeplessness, gastrointestinal distress, upset stomach; nightmares, depression, feelings of despair, difficulty in driving and working, and an over-all ‘lousy’ feeling” constitute physical manifestations of emotional distress. 414 Mass. at 131-32, 139. However, the Court nevertheless adhered to its requirement that the plaintiffs introduce “objective evidence of harm” through expert testimony or other means. Id. at 139-40.
Based on the summary judgment record before the court, Mr. Moesta’s claim for emotional distress must fail. In his answers to interrogatories, Mr. Moesta states that the loss of his son has caused him “strain, stress, and anxiety." Although he contends that his strain, stress, and anxiety fall within the scope of physical manifestations of emotional distress, Mr. Moesta has failed to provide objective evidence to corroborate his alleged injuries. Notably, in his answers to interrogatories, he admitted not receiving treatment for physical or emotional injuries suffered due to Dr. Milunsky’s alleged negligent conduct. In the absence of corroboration of physical injuries, the court must grant Dr. Milunsky’s motion for summary judgment on Mr. Moesta’s emotional distress claim.
In contrast, Mrs. Moesta has submitted sufficient evidence of emotional distress to survive a motion for summary judgment. Mrs. Moesta produced a letter by Dr. Daniel M. Weiss, which describes her physical symptoms of emotional distress. Dr. Weiss noted that she has experienced trouble sleeping, loss of appetite, irritability, feelings of guilt, depression and agitation. The symptoms describe in the letter not only resemble the injuries accepted in Sullivan but also objectively corroborate her symptoms of emotional distress. Therefore, Dr. Milunsky’s motion for summary judgment with respect to Mrs. Moesta’s claim for emotional distress must be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that Defendant Aubrey Milunsky, M.D.’s motion for summary judgment is ALLOWED as to Count XIV of the amended complaint and is DENIED as to Counts XI, XII, and XIII.

 There is a factual dispute as to what transpired during the counselling session. Mr. and Mrs. Moesta claim that they were informed that the fetus was a female who suffered from a severe case of Turner’s Syndrome, a permanent condition unresponsive to treatment. They allege that Dr. Milunsky stated that Turner’s Syndrome occurs orily in females and is characterized by short stature, a webbed neck, heart and kidney problems, and learning difficulties. They also state that the doctor informed them that Turner’s Syndrome causes sterile females who do not ovulate and lack breasts. Furthermore, Mr. and Mrs. Moesta allege that Dr. Milunsky never informed them that the chromosomal analysis was ambiguous, with there being a possibility that the fetus could be male with a deleted X chromosome.
Dr. Milunsky denies stating that the fetus was a girl with Turner’s Syndrome. He asserts that he informed Mr. and Mrs. Moesta that the ambiguous chromosome could indicate either a female with Turner’s Syndrome or a male who is sterile, of short stature, and suffers from learning defects with rare instances of retardation. These disputed issues of fact are immaterial to the motion for summary judgment.

 Dr. Milunsky claims that he mailed a copy of this report to Mr. and Mrs. Moesta, who deny receiving it.

 Mr. and Mrs. Moesta allege that their decision was based on the diagnosis of Turner’s Syndrome rendered by both Dr. Milunsky and Dr. Deloge. They claim that neither physician performed an ultrasound. In particular, Dr. Milunsky allegedly urged that there was no time to perform an ultrasound unless Mr. and Mrs. Moesta decided to continue the pregnancy, which was then at 22 weeks. Further, Dr. Deloge allegedly neither advised them that the fetus could be male with a deleted X chromosome nor performed an ultrasound to determine its sex.