Murphy, J.
On March 20, 2003, plaintiffs John and Rosemary Pasquale (“Pasquales”) filed a three-count complaint against defendants Towns of Reading and North Reading (“Towns”), and the Reading Municipal Light Department (“RMLD”) for an electrical fire at their home, alleging negligence (Count i), negligent infliction of emotional distress (Count II), and breach of contract (Count III). The Pasquales seek compensatory damages for real and personal property and personal injuries relating to the fire. The defendants now move for summary judgment against the Pasquales, denying liability on each of the three counts. In addition, defendant RMLD moves for summary judgment on the ground of improper presentment under §4 of G.L.c. 258 (Massachusetts Tort Claims Act) before commencing suit. For the reasons stated below, this motion is ALLOWED for the Towns, and ALLOWED in part and DENIED in part for RMLD.
BACKGROUND
On March 22, 2001 at approximately 2:00 a.m., an electrical fire occurred at the Pasquales’ home in North Reading, Massachusetts. Mr. Pasquale saw sparks and fire in the immediate vicinity of the service entrance cable near the electrical meter in the basement. Harold Lander, a neighbor, recalled a flickering coming down the side of the Pasquales’ house and a “fire like falling down” and that the meter “box” was on fire. Mr. Lander also remembered that that night, there was a “horrible rain ... pouring rain and some lightning and we lost the lights for . . . half an hour or twenty minutes.”
At least two investigations at the Pasquales’ home followed to determine the cause of the fire. The first, by Captain Richard Nash of the North Reading Fire Department, revealed that the fire originated at the electrical panel in the boiler room and resulted from water infiltration. Captain Nash also found that the fire path began at the service panel and ended just below the meter socket outside of the house. The second, by Paul Carson, Chief Engineer for RMLD, found that the “main breaker in the panel was completely destroyed to the point where only a plastic base plate and a few small metal parts remained,” but that the meter was still operational. Mr. Carson also found that the damage originated at the main breaker in the panel and traveled along the service entrance cable into the ceiling in the basement. Mr. Carson discovered “evidence to suggest that water may have been entering the meter socket through the top or back of the socket and pooling in the bottom of the box.”
In the three to four weeks preceding the fire, there were a number of power outages in the neighborhood. While RMLD received no formal reports of outages in the area on March 21, 2001, Mr. Landers stated that the power did in fact go out for “half an hour or twenty minutes.”
The summaiy judgment record reveals the following additional undisputed facts. RMLD provided electricity to the Pasquales on March 22, 2001. RMLD is a separate juridical entity, owned, but not controlled, by the Town of Reading. When the Pasquales initiated their service in 1975, they filed a “Customer Application” for electrical service with RMLD and agreed “to be bound by the RULES and REGULATIONS FOR THE TOWN OF READING MUNICIPAL LIGHT DEPARTMENT governing the use of electricity.” RMLD owned the meter and service wire from the pole to the service loop connected to the Pasquales’ home. It is not the practice of RMLD to maintain or repair any of the service cable located on the side of a customer’s house leading to the meter socket, the meter socket itself or any of the electrical equipment on a customer’s property. Under its General Terms and Conditions of Service (“Terms and Conditions”) filed with the Department of Telecommunications and Energy, §18, RMLD is not liable for any “interruption, abnormal voltage, discontinuance or reversal of its service, due to causes beyond its immediate control. . .”
Following the electrical fire and subsequent investigations, the Pasquales sent letters of presentment to each of the three defendants: Town of Reading, Town of North Reading, and RMLD. They sent three letters of presentment to the Town of North Reading on December 31, 2001: one to the Board of Selectmen, one to the Executive Secretary, and one to the Town Counsel. In addition, the Pasquales sent a letter of presentment on December 31, 2001 to RMLD. This letter, however, was not addressed to any specific person or group of persons, but only to “Sir or Madam.” On March 27, 2002, the Pasquales sent three letters of presentment to the Town of North Reading as well, addressed to the Board of Selectmen, the Executive Secretary, and the Town Counsel. In all, the Pasquales sent seven letters of presentment, each of which was identical in content. In each letter, the Pasquales stated the date of the fire, that “it has been determined that the fire was caused by an abnormal and irregular supply of electrical power,” a claim for damages to real and personal property approximating $100,000, and that the fire resulted from the Town of North Reading’s and/or RMLD’s negligence.
There were at least three letters of correspondence between RMLD’s insurance carrier and the Pasquales regarding an investigation into the cause and circumstances of the fire to determine negligence and damages. In a letter dated November 22, 2002, RMLD’s insurance carrier denied the Pasquales’ claim unless and until the Pasquales supplied evidence that would indicate RMLD’s negligence. In response, on February 3, 2003, the Pasquales stated they would not provide an expert report, but they had an expert who would *460 testify as to RMLD’s negligence. In closing, the Pasquales stated that “because you have not made any offer of settlement in this case, we are preparing a Complaint and expect that it will be filed in the near future. Please let us know if you decide that you would like to discuss settlement or, even, mediation.”
The Pasquales incurred real and personal property damages, but suffered no physical injuries as a result of the fire. While Mrs. Pasquale suffers from high blood pressure, this condition existed prior to the fire. Neither Mr. nor Mrs. Pasquale offered medical testimony on the Summary Judgment record of physical injuries or mental distress, but they assert that each suffers from feelings of “anger and upset” and “anxiety/fear of fire/alarms” because of the fire.
DISCUSSION
Summary judgment is properly granted where there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue and entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). This burden maybe met by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege facts which would establish the existence of a genuine issue of material fact in order to defeat [the motion].” Pederson, 404 Mass. at 17.
I. Towns of Reading and North Reading
A. Defendant Towns are Not Liable for Negligence or Negligent Infliction of Emotional Distress Because Public Employers are Immune from Tort Liability for Harmful Consequences They Did Not Originally Cause and Because There Can Be No Liability for the Conduct of Others (Counts I and II)
With respect to the Towns, the court need not reach any issue sounding in the failure of proper presentment because the court concludes the matter is governed by sovereign immunity under §10(j) of G.L.c. 258. Under this statute, a town enjoys immunity from “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation . . . which is not originally caused by the public employer . . .” G.L.c. 258, §10(j). Our courts have interpreted “originally caused” to mean an affirmative act, not a failure to act, that materially contributes to creating a harmful condition or situation. Kent v. Commonwealth, 437 Mass. 312, 319 (2002); Jacome v. Commonwealth, 56 Mass.App.Ct. 486, 489 (2002). The purpose of this law is to preclude the liability of towns for failures to prevent or diminish harm, including harm brought about by the wrongful act of a third party. Brum v. Dartmouth, 428 Mass. 684, 696 (1999).
In this case, the Towns were not engaged in any affirmative acts dealing with the supply of electricity to the Pasquales. RLMD provides electricity to the Pasquales’ home, not the Town of Reading or the Town of North Reading. Municipal light departments are separate juridical entities from the municipalities whose name they bear. See Middleborough v. Middleborough Gas and Electric Dept., 422 Mass. 583, 584-85 (1996). The statutory structure, independence, and separate regulatory control of municipal light departments under G.L.c. 164, §§34-69 require them to be treated as separate and distinct entities. Because the Pasquales cannot show that the Towns “originally caused” the harmful condition or situation, the Towns are immune from tort liability under G.L.c. 258, §10(j). Accordingly, summary judgment for the Towns is granted on Counts I and II.
B. No Contract Existed Between the Parties (Count III)
The Pasquales allege that the Towns breached their contract with them by failing to properly supply electrical power to their home or service, maintain, inspect and/or repair the electrical power equipment or devices at their home. To recover against a municipality for breach of contract, the plaintiffs must demonstrate that a contract was in place. Mass. Gen. Hosp. v. Revere, 385 Mass. 772, 774 (1982). No contract to supply electricity existed between the Pasquales and the Towns. Nor did the Towns enter into any agreements with the Pasquales to provide, maintain, service, or inspect the electrical equipment on their property. The Pasquales fail to prove an essential element of their claim — the existence of an enforceable contract. Consequently, the Towns are entitled to summary judgment on Count III as well.
II. RMLD
A. The Pasquales’ Presentment Letter to RMLD Meets the Purposes of G.L.c. 258 so as to Constitute Adequate Presentment for Purposes of the Statute
In regard to RMLD, the first issue is whether this case must be dismissed because of a claimed technical infirmity in presentment. As a public employer,[3] RMLD has aright to presentment.[4] G.L.c. 258, §§1,4. RMLD asserts the Pasquales’ letter of presentment failed in two respects: 1) it was not made to the appropriate “executive officer,” and 2) it only claimed negligence, not also negligent infliction of emotional distress, later included in the complaint.
The purpose of presentment is to provide notice to a person or group of persons at the public employer with the capacity to negotiate or settle the claim before a lawsuit commences. As Lodge v. District Attorney for *461 the Suffolk Dist., 21 Mass.App.Ct. 277 (1985), explained, “[presentment ensures that the responsible public official receives notice of the claim so that the official can investigate to determine whether or not a claim is valid, preclude payment of inflated or non-meritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future.” Id. at 283. The letters of presentment by the Pasquales met this purpose.
While it is technically true with respect to municipalities that presentment must be to the'appropriate executive officer, the court concludes that in this case, where it is undisputed that RMLD had actual and timely notice of the claim to satisfy the underlying purposes of the statute, the statute was satisfied. The Pasquales’ letter of presentment stated that on March 22, 2001, a fire occurred at their home at 12 Hickoiy Lane, North Reading, Massachusetts; that the fire was caused by an abnormal and irregular supply of electrical power to the Pasquales’ home; and that the fire damaged and/or destroyed the real and personal property of the Pasquales in the amount of approximately $100,000. The letter expressly fleshed out the negligence theoiy. RMLD received this notice on January 2, 2002, well within the two-year limitations period. In addition to presentment to RMLD, the Pasquales sent letters of presentment to the Board of Selectmen, Executive Secretary, and Town Counsel of the Towns of North Reading and Reading, to ensure that all parties in a position of negotiation or settlement had notice. RMLD cannot allege that it lacked notice, when its own insurance carrier sent letters to the Pasquales in response to the presentment letters, stating that it was investigating the negligence claim. Any claimed infirmity of making presentment to “Sir or Madam” in lieu of perhaps “Chairman of the Board” is, in the view of the court, de minimis and not an infirmity which rises to the draconian result of a mandated dismissal of the case.
As to the second issue, that the presentment letter failed to include a claim for negligent infliction of emotional distress, the court finds that it is not necessary to exhaust all of the possibilities of the initial claim, especially when that claim is grounded in negligence. The Pasquales’ claim was within the requirements and purposes of G.L.c. 258, §4. The claim allowed the appropriate public officials to ascertain its nature, to investigate, and to take appropriate action to determine that it was not based on an intentional tort or other claim that would fall outside of G.L.c. 258. See Gilmore v. Commonwealth, 417 Mass. 718, 721 (1994).
RMLD cites cases where the courts found improper presentment because the plaintiffs failed to state all of their claims in the letter of presentment. Tambolleo v. West Boylston, 34 Mass.App.Ct. 526, 533 (1993) (plaintiff asserted an intentional tort in the presentment letter and then later, in the complaint, brought in negligence); Wightman v. Methuen, 26 Mass.App.Ct. 279, 280-81 (1988) (presentment letter spoke only of a tort barred by c. 258, § 10(b), but then later, plaintiff claimed negligence). These cases, however, differ from the case at hand in one material respect. In TamboUeo and Wightman, the plaintiffs made claims in the presentment letter that were barred by c. 258, §10; later, they tried to bring in claims of negligence, not mentioned in the letters. Gilmore, 417 Mass. at 723. It is less of a logical leap to go from negligence causing real and property damages, already asserted in the presentment letter, to negligent infliction of emotional distress causing personal damages, than it is to go from a claim invalid under c. 258 to negligence. Id.; see Martin v. Commonwealth, 53 Mass.App.Ct. 526, 531 (2002) (“It would take no great leap for the public official receiving the letter to infer” emotional distress from the initial negligence claim). Similar to Martin, in the present case, where the complaint includes a claim not in the presentment letter, but no greater or different investigation of the facts giving rise to liability is necessary, the letter constitutes adequate presentment. Id. at 532.
It is important to remember, “the presentment requirement was not intended to demand such rigid particularization as to reincarnate sovereign immunity and bar legitimate claims for failing to invoke perfectly the correct ‘Open Sesame.’ ” Id. at 530. In summary, the court finds that the presentment letters by the Pasquales adequately raised a claim that RLMD negligently provided electrical power.
B. The Pasquales Have Met Their Burden of Demonstrating Genuine Issues of Material Fact on the Issue of RMLD’s Negligent Supply or Monitoring of Electrical Power (Count I)
The Pasquales assert two primary grounds for negligence. First, they argue that RMLD was negligent in failing to properly service, maintain, inspect, and/or repair the electrical power equipment or devices at their home, whereby such services could have prevented the fire. Second, they contend that RMLD failed to properly supply or monitor the supply of electrical power, enabling a power surge, which ultimately caused the fire.
The Pasquales’ first claim, negligent failure to property service, maintain, inspect, and/or repair electrical power equipment or devices, is barred by c. 258, § 10(f).[5] Even though RMLD failed to argue this issue, § 10(f) applies and thus bars this aspect of the Pasquales’ negligence claim.
To the extent that the Pasquales’ first claim is barred by c. 258, § 10(f), the power surge claim survives. RMLD claims immunity under c. 258, §10(j),[6] but the key phrase here is that the public employer will not be liable for an act or omission “not originally caused by the public employer.” See Jacome, 56 Mass.App.Ct. at 489. For summary judgment, RMLD must demonstrate that, based on the evidence viewed *462 in a light most favorable to the Pasquales, a jury could not reasonably conclude that RMLD had “not originally caused” the power surge. This matter is for the fact finder to determine. Summary judgment is rarely appropriate in negligence cases “because of the jury’s ‘unique competence in applying the reasonable man standard.’ ” Appleby v. Daily Hampshire Gazette, 395 Mass. 32, 37 (1985), quoting Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984). As such, the court finds that the Pasquales adequately raised a claim of negligence, not barred by §10(j).
RMLD next contends that even if they do not have protection under §10(j), they are not liable for the power surge claim because they enjoy limited liability under the Terms & Conditions of their service. Under the Terms & Conditions, §18, RMLD “shall not be liable for, or in any way in respect of any interruption, abnormal voltage, discontinuance or reversal of its service, due to causes beyond its immediate control ...” (emphasis added). The court views this exemption as applying to a vis major, such as a lightning bolt.
Thus, given that the Pasquales’ tort claims are not barred by c. 258, §10(j), or necessarily restricted by the limited liability clause in the Terms & Conditions, then the issue becomes whether there was a power surge or other abnormal or irregular supply of electricity, and whether that abnormality was within RMLD’s immediate control. As the party moving for summary judgment, RMLD has “the burden of affirmatively demonstrating that there is no genuine issue of fact on every relevant issue raised by the pleadings.” Mathers v. Midland-Ross Corporation, 403 Mass. 688, 690 (1989), quoting Attorney Gen. v. Bailey, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982). RMLD met its burden by demonstrating that the cause of the fire could have been from something other than a power surge, such as water infiltration. Once RMLD met its burden, “the burden shifted to the plaintiff(s] to show with admissible evidence the existence of a dispute as to material facts.” Mathers, 403 Mass. at 690, quoting Godbout v. Cousens, 396 Mass. 254, 261 (1985). The Pasquales have met their burden as well. The Pasquales offered facts which show, or at least raise a factual issue, whether there was a power surge on or around the night of March 22, 2001, and whether that surge was within RMLD’s immediate control. The Pasquales offered evidence of a history of reported problems with electrical service by RMLD in the three to four weeks leading up to the fire; testimony of fire, sparks, and smoke in the area of the service entrance cable and electrical meter; and that these events and conditions are consistent with an abnormal or irregular supply of electrical power or service, including, but not limited to, an uncontrolled electrical power surge. Because the Pasquales have met their burden, leaving genuine issues of material fact on the existence and cause of a power surge or other abnormal supply of electricity, on or around March 22, 2001, summary judgment for RMLD on Count I is denied.
C. The Pasquales Lack Sufficient Evidence of Objective Physical Manifestation to Corroborate Their Claim of Negligent Infliction of Emotional Distress (Count II)
While the court does not feel failure to include negligent infliction of emotional distress in the presentment letter bars the claim, upon review of the summary judgment record, the court concludes that this claim nonetheless must fail for want of sufficient evidence of objective physical manifestation. In Sullivan v. Boston Gas Co., 414 Mass. 129 (1993), the Supreme Judicial Court held that in order to state a cause of action for negligent infliction of emotional distress, one of the elements plaintiffs must demonstrate is sufficient evidence of harm to corroborate their mental distress claims. Id. at 140.
Massachusetts courts and the Restatement (Second) of Torts (1965) provide some guidance on what constitutes sufficient evidence to corroborate a mental distress claim. In Sullivan, the court held that headaches, muscle tenderness, gastrointestinal distress, sleeplessness, and medical testimony formed sufficient evidence of physical manifestation to satisfy the summary judgment hurdle. 414 Mass. at 139. Compare Papasodero v. Thayer & Assoc., Civil No. 00-0570B (Worcester Super.Ct. Apr. 25, 2002) (Fecteau, J.) (14 Mass. L. Rptr. 684) (defendants’ motion for summary judgment was allowed where plaintiffs suffered “great, extreme and severe distress of mind,” but failed to cite “a particular date or time they experienced these symptoms” or “to offer any medical testimony to corroborate their personal experiences”). According to the Restatement, repeated hysterical attacks are illnesses sufficient to corroborate the existence of mental distress. Sullivan, 414 Mass. at 135, citing Restatement (Second) of Torts §436A cmt. c (1965). In addition, headaches or nausea could qualify if they lasted for a substantial period of time. Id.
In the present case, the Pasquales offer no evidence in the summary judgment record of objective physical manifestation to corroborate their claim. This case is much more like Papasodero than Sullivan in that the Pasquales fail to cite any particular dates in which they experienced symptoms of their claimed anxiety, or offer any medical testimony to corroborate their feelings. See Sullivan, 414 Mass. at 131-32; Papasodero, Civil No. 00-0570B. Although Mrs. Pasquale suffers from high blood pressure, which comes closer to the type of physical manifestation discussed in Sullivan, she admits that the condition existed prior to the fire. In his deposition, Mr. Pasquale states that he suffered no personal injuries or other problems pursuant to the fire.
Further, the Pasquales offer no evidence of medical testimony to corroborate their claims. The court acknowledges that medical expert testimony is not a determinative factor to establish a claim for emotional distress. Papasodero, Civil No. 00-0570B. However, *463 unlike in Sullivan, where the plaintiffs offered medical testimony, the Pasquales actually state that their doctors found them to suffer from no problems as a result of the fire.
The most either Mr. or Mrs. Pasquale can muster in the form of evidence on this issue include feelings of “anger and upset" and an undiagnosed “anxiety/fear of fire/alarms.” The court need not reach a conclusion on whether a diagnosed anxiefy alone may be sufficient to satisfy the standard, as the Pasquales do not have even that much. While a judge need not be a “super doctor” and classify ailments along mental versus physical lines, there must be something more than mere “upset” or “anger” to advance a claim of negligent infliction of emotional distress. Id. at 134-35. “[U]pset, anger, or grief,... these feelings alone do not constitute sufficient physical manifestation.” Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396 (2002). As a result, summary judgment for RMLD on Count II is granted.
D. The Pasquales Fail to Demonstrate the Existence of a Contract Between Themselves and RMLD (Count III)
The Pasquales fail to demonstrate that a contract existed with RMLD which RMLD subsequently breached. In their complaint, the Pasquales assert that RMLD “contracted and agreed to service, maintain, inspect and . . . repair the electrical equipment and devices in the Pasquales’ home and properly monitor, furnish, and/or supply electrical power to the home.” In order to effectively claim breach of contract, the plaintiffs must establish the existence of an enforceable contract, breach of that contract, and resulting damages. Carney v. New England Tel. & Tel. Co., 353 Mass. 158, 164 (1967).
The Pasquales premise their claim of the existence of a contract on the Terms & Conditions RMLD filed with the Department of Telecommunications and Energy pursuant to G.L.c. 164, §§58-59 and 220 Code Mass. Regs. §5.01. The Supreme Judicial Court has held that a tariff “does not create a contract” between an electric company and its customer. FMR Corp. v. Boston Edison Co., 415 Mass. 393, 396 (1993) (plaintiff-consumers cannot claim a contract existed between themselves and the electric company, solely because the electric company filed a tariff with the Department of Public Utilities pursuant to G.L.c. 164). Because the Pasquales fail to meet one of the basic elements of establishing a breach of contract claim, summary judgment for RMLD on Count III is granted.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Towns’ motions for summary judgment are ALLOWED. Moreover, RMLD’s motion for summary judgment is ALLOWED as to Count I and DENIED as to Counts II and III.

Section 1 of G.L.c. 258 defines “public employer" to include “the commonwealth and any county, city, town and any department, office, commission, committee, council, board, division, bureau, institution, agency or authority thereof including a local water and sewer commission including a municipal gas or electric plant, a municipal lighting plant or cooperative which operates a telecommunications system pursuant to section 47E of chapter 164 . . .”

Section 4 of G.L.c. 258 states, in relevant part: “A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section.”

Sechon 10(f) of G.L.c. 258 bars any claim against a public employer “based upon the failure to inspect, or an inadequate or negligent inspection, of any property, real or personal, to determine whether the property complies with or violates any law, regulation, ordinance or code, or contains a hazard to health or safety...”

Section 10(j) of G.L.c. 258 bars against a public employer “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.” (Emphasis added.)